1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

| | |
|---|---|
| Joshua David Mellberg LLC, et al., | No. CV-14-02025-TUC-CKJ |
| Plaintiffs, | **ORDER** |
| v. | |
| Jovan Will, et al., | |
| Defendants. | |

15    This case arises out of the alleged theft by former employees and associates of
16  Plaintiff Joshua David Mellberg, LLC, dba J.D. Mellberg Financial, of trade secrets and
17  confidential information, including client lists, internet-based marketing data, and
18  training materials, related to the sale and marketing of annuities.  The Court previously
19  adopted the findings of a Report and Recommendation that the allegations did not state
20  claims against Impact and dismissed claims against Impact Partnership (Impact) raised in
21  the First Amended Complaint (FAC) and.  (Docs. 45, 53.)  The dismissal was with leave
22  to amend. Plaintiffs Joshua David Mellberg, LLC, dba J.D. Mellberg Financial, and
23  Joshua David Mellberg filed a Second Amended Complaint (SAC) asserting multiple
24  counts against various Defendants, including Defendant Impact.[1] (Doc. 54**,** SAC.)

25
26
27

---

[1] In addition to Impact, the individual Defendants are Jovan Will, Tree Fine, John Steve Arceo, Fernando Godinez, Patricia Latham, and Carly Uretz. All Defendants have filed Answers to the SAC except for Impact and Latham.  A Clerk's entry of default has been filed as to Defendant Latham.  (Doc. 70.)

28

Defendant Impact has filed a Motion to Dismiss the SAC, and Plaintiff opposes it. (Docs. 55, 60.)  On January 22, 2016, Magistrate Judge Charles R. Pyle issued a Report and Recommendation (R & R) recommending that the Motion to Dismiss be denied. (Doc. 82.)  Defendant Impact has filed Objections to the R & R, and Plaintiffs have filed a response.  (Docs. 83, 84.)

The Court will overrule the objections, adopt the R & R, and deny the Motion to Dismiss.

## I.      Background

Plaintiffs are Joshua David Mellberg, LLC, dba J.D. Mellberg Financial, and Joshua David Mellberg, an individual (collectively referred to as "JDM" or "Plaintiffs"). Individual Plaintiff Joshua David Mellberg is a nationally known financial advisor and advocate of retirement plans that include annuity components; he is JDM's owner and President. (SAC ¶¶ 18-20.) "Annuities are among the financial services products that JDM offers to its clients." (*Id.* ¶ 22.) The SAC describes JDM as a "nationwide retail and wholesale insurance agency that specializes in capturing internet based leads and supplying them to a network of agents across the country." (*Id.* ¶24.) JDM asserts that its "business advantage is derived in part from confidential and proprietary business information and practice, and from trade secrets that it has developed in its long history of business." (*Id.* ¶ 26.)

The individual Defendants are former employees of JDM or were associated with JDM at different times from 2009 through much of 2013. Fine, Arceo, and Godnitz signed confidentiality agreements. (*Id.* ¶¶ 76, 121, 140.) Defendant Impact is alleged to be a Georgia limited liability company with its principal place of business in Kennesaw, Georgia, and "a marketing organization in the insurance and annuity industry." (*Id.* ¶ 3). JDM has asserted claims against Impact based on Misappropriation of Trade Secrets Information under the Arizona Uniform Trade Secret Act, A.R.S. § 44-401, et seq. (Second Claim for Relief); Unfair Competition[2] (Third Claim for Relief); Civil

---

[2] This claim is pled in the alternative; that is, if the matters alleged to be trade

Conspiracy (Ninth Claim for Relief); and Aiding and Abetting (Tenth Claim for Relief). (Doc. 54, SAC at ¶¶ 185-206, 236-45). Defendant Impact moves to dismiss all claims raised against it, asserting that the allegations do not state claims as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 55.)

In its objections to the R & R, Impact argues that the Magistrate Judge incorrectly determined not to dismiss the SAC. Specifically, it contends that as to misappropriation of trade secrets (1) the R & R improperly relies on legal conclusions, (2) Impact is not liable for the actions of non-party JFI,[3] (3) the R & R relies on allegations from the FAC that were found insufficient to state a claim, and (4) the R & R fails to specify trade secrets that Impact allegedly misappropriated. As to the claims of conspiracy and aiding and abetting, Impact asserts that (1) Plaintiffs fail to allege sufficient facts to state a claim and (2) the R & R does not address Impact's pre-emption argument. Finally, as to unfair competition, Impact argues that the SAC does not allege specific confidential information that does not rise to the level of a trade secret allegedly stolen by Impact.

Plaintiffs respond, *inter alia,* that the Court has previously ruled that the items or information misappropriated state a claim for trade-secret status, the SAC alleges Impact's active involvement in a conspiracy to steal JDM's trade secrets and confidential information or, at the very least, its acquisition and use of JDM's trade secrets under circumstances where it knew or should have known they were improperly acquired, and that there are sufficient allegations from which a jury could infer both.

---

secrets are found not to be trade secrets, they are confidential information that was misappropriated, and such misappropriation constitutes unfair competition.

[3] Plaintiffs allege that they learned that Defendants Impact Partnership, Will and Fine formed JFI, LLC, ("JFI") a Georgia limited liability company, to market and promote their Internet marketing portal for insurance and annuity agents, which was to be based on JDM's stolen trade secrets, including JDM's agent and client lists and the data removed from the JDM computer hard drive that Defendant Fine caused to be destroyed. (SAC ¶ 102). JDM alleges based on information and belief that JFI is owned and operated by Defendants Impact, Fine and Will, and that Impact, Fine and Will at all relevant times were agents, principals, members and/or promoters of JFI. (*Id*. ¶¶ 6-7).

**II.      Standard of Review**

The Court reviews de novo the objected-to portions of the R & R.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The Court reviews for clear error the unobjected-to portions of the Report and Recommendation.  *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

The standard for a motion to dismiss is correctly stated in the R & R and will not be repeated here.  (Doc. 82 at 2-4.)

**III.      Findings and Conclusions of the Magistrate Judge and Parties' Objections**

**A.      Motion to Dismiss**

In its Motion to Dismiss, Impact contends that JDM's claim for misappropriation of trade secrets should be dismissed because JDM has not alleged in the SAC any trade secrets or misappropriation by Impact. Impact argues that (1) the SAC does not sufficiently allege facts showing that the information allegedly misappropriated by Impact constitutes a "trade secret;" and (2) JDM has not alleged in the SAC facts showing that Impact "'knew or had reason to know that [its] knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it'" (A.R.S, § 44-401(2)(b)(ii)), in part because JFI is a separate legal entity from Impact. (Doc. 55 at 5-13). Impact also argues that the remaining claims asserted against it should be dismissed because JDM failed to allege facts in the SAC showing any wrongful conduct by Impact.  (*Id*. at 11-15).

JDM responds that the SAC sufficiently alleges that Impact is using JDM's trade secrets and confidential information and that Impact knew or should have known that this protected information was improperly acquired. (Doc.60 at 8-12). JDM further argues that Impact cannot avoid liability on the ground that JFI is a separate legal entity. (*Id*. at 12-13).

The R & R sets out in detail the SAC allegations as to each Defendant.  (Doc. 82 at 4-11.)

1

2          **1.      Objections to the R & R related to Trade Secrets**

3          Arizona has adopted the Uniform Trade Secret Act ("AUTSA").  A trade secret is

4    defined as "information, including a formula, pattern, compilation, program, device

5    method, technique or process that both:

6

7          (a) Derives independent economic value, actual or potential, from not being
           generally known to, and not being readily ascertainable by proper means by
8          other persons who can obtain economic value from its disclosure or use.
           (b) Is the subject of efforts that are reasonable under the circumstances to
9          maintain its secrecy.

10   A.R.S. § 44-401(4). In an action for misappropriation, the plaintiff "must identify the

11   trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak*

12   *Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993); *Calisi v. Unified Fin. Servs., LLC*, 302

13   P.3d 628, 631 para. 14 (Ariz. App. 2013). The plaintiff is further required to "describe the

14   subject matter of the trade secret with sufficient particularity to separate it from matters

15   of general knowledge in the trade or special knowledge of those persons ... skilled in the

16   trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998).

17         In Arizona, "misappropriation" is defined as either:

18

19         (a) Acquisition of a trade secret of another by a person who knows or has
           reason to know that the trade secret was acquired by improper means.
20         (b) Disclosure or use of a trade secret of another without express or implied
           consent by a person who either:
21         (i) Used improper means to acquire knowledge of the trade secret.
22         (ii) At the time of disclosure or use, knew or had reason to know that his
           knowledge of the trade secret was derived from or through a person who
23         had utilized improper means to acquire it, was acquired under
           circumstances giving rise to a duty to maintain its secrecy or limit its use or
24         was derived from or through a person who owed a duty to the person
25         seeking relief to maintain its secrecy or limit its use.
           (iii) Before a material change of his position, knew or had reason to know
26         that it was a trade secret and that knowledge of it had been acquired by
27         accident or mistake.

28

                                              - 5 -

A.R.S. § 44-401(2).  "Improper means" is defined as including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means." A.R.S. § 44-401(1).

### a.    Miscellaneous objections

In its previous ruling on various Defendants' motions to dismiss, the Court noted that JDM had specifically identified in the FAC "'[t]he confidential information and trade secrets regarding JDM's sales and marketing funnels.'" (Doc. 45 R&R at 9; Doc. 53, Order adopting R&R). These relate generally to internet-based marketing; particular use of email, including email that converts to website visits and email advertising; call center performance; and training for financial advisors.[4]  The facts are realleged in the SAC; Impact does not assert otherwise.  In the R & R addressing the latest Motion to Dismiss, the Magistrate Judge determined not to further revisit the trade secrets issue as argued by Impact and recommended finding that the trade secrets that the individual Defendants allegedly misappropriated are the same trade secrets Impact allegedly misappropriated. (Doc. 82 at 15.)

In the Objections, Impact argues that Plaintiff has never alleged a protectable trade secret and that "[m]any of the claimed trade secrets, such as websites and marketing materials provided to third parties, cannot by their nature constitute trade secrets."  (Doc. 83 at 7.)   As noted, this Court has already found that Plaintiffs have adequately alleged trade secrets, including training materials, and therefore overrules Impact's objection on this issue.  (Doc. 45 at e.g. 16 (referencing internet marketing portal for insurance and annuity agents), Doc. 53.)  "[A] trade secret may include a grouping in which the components are in the public domain but there has been accomplished an effective, successful and valuable integration of those public elements such that the owner derives a

---

[4] One training program developed by Plaintiff and that features prominently in the case is the JDM Face-2-Face advisor training program, a two day marketing and sales event for prospective agents, on which JDM alleges to have spent millions of dollars developing content, materials, and techniques.  (SAC ¶ 28.)

competitive advantage from it." *See Enter. Leasing Co. v. Ehmke*, 197 Ariz. 144, 149, 3 P.3d 1064, 1079 (Ariz. Ct. App. 1999) (citations omitted).

Impact also objects to the R & R on the ground that Plaintiffs rely on allegations that the Court previously held did not state a claim. Impact asserts that "Plaintiffs' sought and the Magistrate [improperly] undertook, in effect, a reconsideration of the earlier R & R." (Doc. 83 at 6.)   According to Impact, an example of some of the "re-hashed" allegations in the Magistrate Judge's report concern Defendant Arceo's alleged "work for" Impact Partnership. (*See* Doc. 54 ¶¶ 126, 127; Doc. 82 at 22.)  Impact contends that according to the SAC, Arceo's work was for JFI, not Impact.

To the extent that Impact objects on the ground that the R & R considers some of the same allegations as were previously found insufficient, the Court overrules the objection.  The Court never ruled that the allegations in the FAC were irrelevant to the claims raised. The R & R also considers new allegations made in the SAC relevant to the claims against Impact.  (*See e.g.*, SAC. ¶¶ 3, 6-7, 28-29, 66-69, 86-88, 93-94, 98-101, 103-015, 109-111, 114-115, 132-133, 142-143, 149-150, 159, 171-173, 176.)[5] On a 12(b)(6) motion, a court "must [also] consider the complaint in its entirety," and must not "scrutinize each allegation in isolation but . . . assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 326, 127 S. Ct. 2499 (2007).  As discussed below, the SAC sufficiently alleges misappropriation and a connection to Impact.

Impact objects that the SAC relies on unsupported legal conclusions.  (Doc. 83 at 3.)   As an example, Impact points to the allegation:

> Upon information and belief, Arceo, <u>aided and abetted by and in concert with Defendants Impact</u>, Will and Fine, is using JDM materials and

---

[5] Impact complains that some of these allegations relate specifically to JFI, not Impact.  But as discussed below, the Court finds sufficient allegations connecting the misappropriate by individual Defendants to Impact and connecting Impact to JFI's use of trade secrets and confidential information.

techniques to teach advisors through Impact Partnership how to use JDM proprietary sales processes, metrics, and scripts.

(Doc. 83 at 3; ref. Doc. 54 ¶ 127 (emphasis added).)  Impact asserts this is an allegation about Arceo and it does not specify what Impact did, or how Impact knew of any improper means, or what disclosure or use Impact has made.  (Doc. 82 at 22.)

Even if the allegation does not allege facts as to Impact—and the Court believes it does—each allegation does not have to state every element of a claim.  Moreover, there is no requirement that a Court <u>disregard</u> allegations with legal conclusions; a complaint without legal conclusions would be difficult to comprehend and not put the defendants on notice of the claims against them.  Rather, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), but "well-pleaded factual allegations" must be taken as true and factual allegations and all reasonable inferences to be drawn from them must be construed in the light most favorable to the plaintiff. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009), as amended (Feb. 10, 2009).  As discussed below, the Court finds there are sufficient allegations regarding the other elements of misappropriation elsewhere in the SAC and the connection to Impact.

### b.  Objections related to imposing liability on Impact

Impact objects to the R & R on the ground that Impact is not liable for alleged acts by non-party JFI.  (Doc. 83 at 4-6.)  Many of the allegations in the SAC concern the "Annuity Angel" and the "Cash Flow College," which Impact describes as "competing programs that Mr. Mellberg filed this action to shut down."  (Doc. 83 at 4.)  Impact argues that these programs were sponsored by JFI and are the property of JFI and that fact is acknowledged by the SAC, including JFI's Subscriber Agreement attached to the SAC. (Doc. 54-1, SAC Ex. 3, ¶¶ 104, 105, 142, 143, 171, 217.)  According to Impact, there are no allegations sufficient to impose liability on Impact for anything to do with "Annuity Angel" or "Cash Flow College" and allegations that contradict the written exhibit are not taken as true on a motion to dismiss.  *See Johnson v. Fed. Home Loan*

*Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015).) Thus, the Court should ignore allegations like the following:

> Upon information and belief, in February of 2014, Defendant Will, acting individually or in concert with Defendants Fine, Impact, Godinez, Uretz, Arceo, had launched several websites very similar to JDM sites, including *www.annuityangel.com* and www.thecashflowcollege.com.

Impact complains that the Magistrate Judge's report relies on this and similar allegations. It argues that the Court should disregard the more general and contradictory allegations that claim that certain of the individual Defendants "worked with," had a "connection to," or were "associated" or had a "relationship" with Impact. (Doc. 54 ¶¶ 88, 89, 126, 194.)  Impact asserts that even if it has or had an ownership interest in JFI, Impact and JFI are two separate entities.   Furthermore, under *Bischofshanusen, Vasbinder, & Luckie v. D.W. Jaquays Min. & Equip. Contractors Co.*, Impact is not liable for the acts of JFI, LLC even if Impact wholly owned JFI as a subsidiary, or financed it, or they were in the same building, shared the same telephone number and same bookkeeper. 145 Ariz. 204, 209, 700 P.2d 902, 907 (App. 1985).

To state a claim against Impact for misappropriation of trade secrets, Plaintiffs need not allege that Impact itself stole the trade secrets; it is sufficient to allege that Impact is using JDM's trade secrets that it knows or has reason to know were acquired through improper means.    Under A.R.S. § 44-401(2)(b) misappropriation includes "[d]isclosure *or use* of a trade secret of another without express or implied consent[.]") (emphasis added).   "[M]isappropriation is not limited to the initial act of improperly acquiring trade secrets; the use and continuing use of the trade secrets is also misappropriation." *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1385, 93 Cal. Rptr. 2d 663, 675 (2000), *as modified on denial of reh'g* (Apr. 7, 2000); A.R.S. § 44-401(2)(b).

The R & R observes that the plaintiff in a trade secret case may rely on circumstantial evidence to prove misappropriation of trade secrets:

Courts ... have repeatedly recognized that plaintiffs in trade secret cases can rarely prove misappropriation by convincing direct evidence. *See PepsiCo, Inc. v. Redmond*, No. 94 C 6838, 1996 WL 3965, at *15 (N.D. Ill. Jan. 2, 1996). 'In most cases, plaintiffs ... must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege did in fact take place.' *Id.* (quoting *Si Handling Sys., Inc. v.Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985));

*Lumenate Technologies, LLC v. Integrated Data Storage, LLC*, Case No. 13 C 3767, 2013 WL 5974731 (N.D. Ill. Nov. 11, 2013).   Thus, it is sufficient to allege circumstantial evidence to state a claim.

Plaintiffs allege, on information and belief, that Impact, Fine, and Will own and operate JFI and that they "were at all times relevant . . . agents, principals, members, and/or promoters of JFI."  (Doc. 54 ¶¶ 6-7.)  But Plaintiffs have asserted more than a mere ownership interest or financing of Impact by the individual Defendants or JFI. Compare *Bischofshanusen, Vasbinder, & Luckie*, 145 Ariz. at 209, 700 P.2d at 907.

The SAC alleges that Defendants Will, Fine, Arceo, Godinez, Latham and Uretz all worked for or were associated with JDM and occupied positions that gave them access to JDM's confidential and proprietary business methods, techniques and programs related to marketing, advertising, sales and training that had been developed over the years at considerable expense, including alleged trade secrets. (SAC ¶¶ 38- 40, 44-45, 74-75, 116, 118, 123-25, 134, 138-41, 151, 154-59, 160-62, 165, 167-69). Will and Fine recruited other JDM employees and devised a scheme to exploit their access to steal JDM's trade secrets and confidential information for use by Impact and the venture. (*See e.g., Id.*, ¶¶ 98, 102, 109, 112.)   While still employed by JDM, Will approached Impact with a proposal to launch a marketing and training program for insurance and annuity agents that would mirror JDM's programs, *id.*, ¶¶ 61, 88, using JDM's trade secrets stolen by Will, Fine and the other individual defendants.  (*Id.* ¶ 102.)   While still employed at JDM, Fine worked on projects for Impact.  (*Id.* ¶ 90.)  He transferred JDM work product to Impact.  (*Id.* ¶ 96.)  He removed the data from a JDM computer hard drive which he

caused to be destroyed.   (*Id.* ¶¶ 78-84.)   According to the SAC, the individual Defendants, in fact, used their access to trade secrets and confidential information and transferred JDM work product to Impact; the individual Defendants then moved to Georgia to work with Impact. (*See e.g., Id.*, ¶¶ 156, 157, 158, 159, 168, 169, 173.)

The SAC alleges that the Cashflow College and Annuity Angel is a competing venture established and owned by Impact, Will and Fine (*id.* ¶ 126); specifically, it is an insurance agent training and marketing program that, according to the SAC, used training and marketing materials that mirrored JDM's programs and was based on JDM's stolen trade secrets. (*Id.* ¶ 69.)  Plaintiffs allege that the Cashflow College sales presentation, which was held at Impact's offices on March 18, 2014, was virtually identical to the JDM customized Face-2-Face training program, including formatting, examples, vocabulary, and the outlining agenda. (*Id.*) At points during the Cashflow College event, the individual Defendants used the very same slides created by JDM for its training program. (*Id.*) All the individual Defendants had access to those slides during their employment at JDM.

Furthermore, the Cashflow College Subscriber Agreement attached to the SAC plainly requires that in exchange for the use of JFI's materials, the agent must transfer all business to Impact:

> 3.5 Subscriber's Business Commitment To JFI. Because JFI will invest significant resources to qualify prospects, make Prospect Connections, improve the Subscriber's marketing materials, marketing efforts and generate prospects for the Subscriber, the *Subscriber agrees to (a) write with JFI affiliate, Impact Partnership, LLC, all of the Subscriber's business generated from JFI Client Acquisition Services, and (b) transfer to Impact Partnership, LLC all of his or her current client annuity and life insurance contracts as soon as commercially reasonable.*

(Doc. 54, Ex. 3(emphasis added).)

Thus, the Agreement shows a direct business relationship between Impact and JFI's Cashflow College, a venture that other allegations assert is based on

misappropriated trade secrets or confidential information, and the relationship shown confers a benefit on Impact by transferring business to Impact. The Agreement also contains clauses regarding the confidential and protected nature of the materials being presented and imposing requirements of non-disclosure on subscribers.[6]   (Doc. 54 ¶¶ 106-108.)

The SAC alleges that Impact is using JDM's confidential information and trade secrets in Impact's call center, which was developed by JDM's former employee Arceo using JDM's trade secrets. (*Id.* ¶¶ 124-127.  Before leaving JDM's employ, Arceo mailed to his personal email address "JDM's call center sales metrics with sales and closing ratios, sales and appointment processes, client contact information, names and contact information for other JDM employees and client appointment tracking system."  (*Id.* 124.) He then moved to Georgia to work with Impact to help Impact replicate JDM's call center operations.  (*Id*. ¶ 126.) In that capacity, Arceo is using JDM materials and techniques to teach Impact's advisors how to use JDM proprietary sales processes, metrics, and scripts.  (*Id*. ¶ 127.)  The SAC alleges that Defendant Arceo "created a series of Annuity Angel webinars and videos to educate advisors on appointment processes and sales techniques" and that the content of these parallels JDM's webinars created for the Face-2-Face program.  (*Id.* ¶ 132.)

The SAC alleges that based on an analysis of Defendant Latham's computer and computer profiles, from July 23, 2013 through July 25, 2013, Latham created documents and spreadsheets that included JDM's confidential and propriety information, such as contact information for thousands of JDM clients, employees, advisors, vendors, partners, and contractors, and she deleted these documents from her computer to conceal her alleged misappropriation.  (*Id.* ¶¶156, 157.)  Latham also uploaded many of these and other documents and spreadsheets to her Google Drive and Dropbox account before

---

[6] Pursuant to Federal Rule of Civil Procedure 10(c), a copy of a written instrument that is an exhibit to a pleading is part of a pleading.

leaving JDM.  (*Id.* ¶158.) She "provided the misappropriated data to Defendants Impact, Fine and Will, which was ultimately used to develop and construct Annuity Angel."  (*Id.* ¶ 159.)

Godinez allegedly had access to JDM's confidential and proprietary information based on responsibilities that included overseeing the design and implementation of advertising campaigns and media buys, measuring the monetary effectiveness of advertising per campaign, and tracking all consumer response and lead flow.  (*Id.* ¶ 139.) While still working at JDM, Godinez allegedly collaborated with Defendants Will, Fine, Arceo and Uretz to copy JDM's sales and marketing programs with the intention of building JFI, d/b/a/ Annuity Angel, a competing company. (*Id.* ¶ 142.)

After her employment was terminated, JDM learned that Defendant Uretz sent confidential and proprietary materials from her JDM email to her personal email account and that these emails included "ongoing work projects, documentation of the JDM advisor recruiting process and initial contact letter, contact information and pricing for third party vendors, non-public advertising copy still in development, and advertising copy associated with third party vendors."  (*Id.* ¶¶ 168, 169.)  JDM alleges that Uretz acting in concert with Impact and the other individual defendants has used or is using copies of its proprietary and confidential systems information and advertising copy in the competing venture JFI d/b/a Annuity Angel. (*Id.* ¶ 171.)

Thus, the SAC alleges direct contact between the individual Defendants and Impact, some of which occurred when the individual defendants still worked for JDM. The individual Defendants are alleged to have contacted Impact about establishing a competing venture and to have transferred work product to Impact in furtherance of that venture. The JFI Cashflow College is alleged to have used materials virtually identical to those in the JDM Face-2-Face program. The SAC also alleges that Impact is using JDM work product in the Annuity Angel and the Impact call center. It alleges contact between individual Defendants and JFI constituting misappropriation and a connection between JFI and Impact beyond mere ownership interest or financing of Impact by the individual

Defendants or JFI. The Cashflow College Subscriber Agreement specifically requires subscribers to transfer their business to Impact.

Accepting as true these and other factual allegations, there are sufficient facts of circumstantial evidence alleged to state a claim against Impact. The Court overrules Impact's objections.

**b.     Objections related to Impact's knowledge of the use of trade secrets or confidential information**

The SAC alleges facts sufficient to show that Impact Partnership knew, or had reason to know, that it was using JDM's trade secrets that had been acquired by improper means. In addition to the factual allegations discussed above the SAC alleges the following:

Impact is "a marketing organization in the insurance and annuity industry," and "Annuities are among the financial services products that JDM offers to its clients." (*Id*. ¶ 22.) The SAC describes JDM as a "nationwide retail and wholesale insurance agency that specializes in capturing internet based leads and supplying them to a network of agents across the country." (*Id.* ¶24.)  Thus, Impact and JDM were business competitors, and the individual Defendants now working for or with Impact were employees of JDM.

In late February 2014, JDM learned from Advisors Excel, a JDM product partner/vendor, that Defendant Will had approached Impact to launch a web-based lead program that mirrors the JDM program.  (*Id*. ¶ 60.) In February 2014 Advisor Excel's counsel sent a letter to Impact and Will demanding that they stop using the Advisor Excel client list that Will obtained while working for JDM.  (*Id.* ¶ 61.)

Fine was responsible for the purchase of JDM's web-based advertising based on AdWords and key words. (*Id*. ¶¶ 44-45, 75.) Defendant Fine while at JDM allegedly visited Impact's website many times, he worked on projects for Impact, he transferred some or all of his work product to Impact and Will, and he caused forensic wipes of his JDM computer devices. (*Id*. ¶¶ 86, 90, 94-96.) The Annuity Angel website has purchased

and is purchasing AdWords and keywords identical in name, pattern, and volume as the purchases Defendant Fine made while at JDM. (*Id.* ¶¶ 64, 104.)

Defendant Latham "had access to JDM's sales training pieces" and confidential client lists. (*Id.* ¶ 153). Latham created on her JDM computer documents and spreadsheets that consisted of JDM's confidential and proprietary contact information and then deleted the information from her computer before leaving JDM. (*Id.* ¶¶ 156-58). Defendant Latham allegedly has provided to Defendants Impact Partnership, Fine and Will the JDM confidential and proprietary information for use in developing and constructing Annuity Angel. (*Id.* ¶ 159.)

Thus, the SAC alleges that Will and other employees, including Arceo, Fine, and Latham transferred work product to Impact and then moved to Georgia to work for or with Impact.

As of February 2014, Defendant Will acting either individually or in concert with Impact Partnership, Fine, Godinez, Uretz and Arceo allegedly had launched the www.annuityangel.com and www.thecashflowcollege.com websites which are similar to JDM's websites. (*Id.* ¶ 62.) Between the time that the individual Defendants left their association with JDM as of November 2013 and the Cashflow College event in March 2014, the competing venture had become operational.  JDM alleges that it spent millions of dollars creating specialized content and material for its Face-2-Face program.  (*Id.* ¶ 28.)  Yet, JFI was able to host its competing training program in only a few months.  In addition, the Subscriber Agreement for the Cashflow College states that the materials are confidential. Accepting as true all factual allegations in the SAC, the nature of the materials, the short time it took to make them operational and the designation of the training materials that were provided at the Cashflow College event are facts that plausibly give rise to the conclusion that Impact knew or reasonably should have known that it was using JDM's trade secrets that had been acquired by improper means

As the R & R concludes, JDM "has alleged in the SAC a 'web' of factual allegations that 'plausibly give rise to an entitlement to relief'" that Impact knew, or had

reason to know, that it was using JDM's trade secrets that had been acquired by improper means. *See Lumenate Technologies, LLC v. Integrated Data Storage, LLC*, Case No. 13 C 3767, 2013 WL 5974731 (N.D. Ill. Nov. 11, 2013). Impact's objections are overruled; JDM is entitled to conduct discovery to more fully support the misappropriation claim.

### 2.        Conspiracy and Aiding and Abetting

A civil conspiracy requires that two or more people "must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Baker v. Stewart Title & Trust of Phoenix*, 197 Ariz. 535, 542, 5 P.3d 249, 256 P30 (App. 2000) (quotation ommitted). Such an agreement "renders each participant in the wrongful act responsible as a joint tort-feasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." *AccuImage Diagnostics Corp v. Terarecon, Inc.,* 260 F. Supp. 2d 941, 952 (N.D. Cal. 2003) (quotation omitted). Participation in conspiracy can be inferred from circumstantial evidence of defendant's conduct, *see United States v. Calabrese*, 825 F.2d 1342, 1348 (9th Cir. 1987), including from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. *In re Sunset Bay Associates*, 944 F.2d 1503, 1517 (9th Cir. 1991). It is axiomatic that "*[c]oordination between conspirators is strong circumstantial proof of agreement*; as the degree of coordination between conspirators rises, the likelihood that their actions were driven by an agreement increases." *United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997) *opinion amended on denial of reh'g*, 127 F.3d 1200 (9th Cir. 1997) (emphasis added). Thus, a "jury may infer the existence of an agreement if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." *Id*. (quotation omitted).

Both conspiracy and aiding and abetting require concerted action. *See e.g.*, *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, P.C., 331 F.3d 406, 414-15 (3d Cir. 2003) (listing elements of civil conspiracy and aiding and abetting claims). Although conspiracy liability requires an agreement between alleged co-conspirators to

commit a tortious act, *see*, *e.g.*, *Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 755 (Cal. Ct. App. 1996), aiding and abetting liability requires only that a defendant knowingly and substantially assist the principal wrongdoer. *See e.g.*, *Pittman v. Grayson*, 149 F.3d 111, 122-23 (2d Cir. 1998). Circumstantial evidence may be used to establish aiding and abetting. *See United States v. Dinkane*, 17 F.3d 1192, 1196-97 (9th Cir. 1994). Moreover, coordinated conduct is evidence supporting an aiding and abetting claim. *See Brumfield v. Hedgpeth*, No. CV 09-0108-MMM JEM, 2012 WL 4442770, at *11 (C.D. Cal. Mar. 30, 2012) *report and recommendation adopted*, No. CV 09-0108-MMM JEM, 2012 WL 4369306 (C.D. Cal. Sept. 23, 2012).

Allegations supporting a conspiracy among the individual Defendants to misappropriate JDM trade secrets for Impact include that fact that all had access to trade secrets or confidential information; all transferred JDM work product to Impact, JFI or both, or to each other for further transfer; and all left JDM employment within 4 to 5 months of each other. (SAC ¶ 123 (Arceo, Aug. 19, 2013), ¶ 58 (Will, before Nov. 2013), ¶ 167 (Uretz Sept. 5, 2013), ¶ 77 (Fine Nov. 14, 2013), ¶ 144 (Godinez, Aug. 5, 2013), ¶155 (Latham, July 26, 2013).) Before leaving JDM, some individual Defendants took steps to conceal their theft of JDM information. (*Id.* ¶¶ 78-84 (Fine), ¶¶ 145-146 (Godinez), ¶ 157 (Latham).) Moreover, all went to work for or with Impact after leaving JDM, where JDM trade secrets and confidential information are being used.

Allegations that plausibly show Impact's involvement in the conspiracy and its liability for aiding and abetting the individual Defendants include but are not limited to the allegations that Impact met with Will while he was still employed by JDM for the purpose of developing a program that mirrors JDM's. (*Id.* ¶ 61.) Fine began working on projects for Impact while still employed by JDM and caused JDM work product to be transferred to Impact. (*Id.*, ¶ 90, 94.) Latham stole JDM client lists, which were then used to solicit JDM employees and contracted agents for Impact. (*Id.*, ¶ 159.) Uretz stole JDM trade secrets; Impact thereafter hired Uretz to work in Georgia where Impact used the stolen trade secrets. (*Id.*, ¶¶ 168, 169, 173, 176.) All of the individual Defendants went to

work for Impact after leaving JDM. All Defendants, including Impact, formed JFI to market and promote Internet marketing for insurance and annuity agents, and JFI sponsored its Cashflow College for such agents using JDM trade secrets.  The Subscriber Agreement for the Cashflow College requires that business generated by the agents from JFI Client Acquisition Services and all existing annuity and life insurance contracts be transferred to JDM. The allegations suggest "[c]oordination between conspirators." *Iriarte-Ortega*, 113 F.3d at 1024.

Impact also complains that the Magistrate Judge's report did not address Impact's pre-emption argument regarding pre-emption of the aiding and abetting and conspiracy claims, citing to a footnote in its reply. (Doc. 83 at 9; ref. Doc. 61 n.5.) That argument relates to pre-emption based on A.R.S. § 44-407 and does not appear to have been raised in the Motion to Dismiss.  The Court does not consider an issue raised for the first time in a reply.  *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003).  In the Motion, Impact asserted pre-emption under the federal Copyright Act.  (Doc. 55-1 at 7.) It argued that "[b]ecause the materials are not trade secrets, federal copyright law likely pre-empts any claim" based on allegations that Defendants and JFI copied Plaintiff's marketing presentations.  (*Id.*)   Impact's argument assumes that the materials are not trade secrets.  But the Court has already determined that Plaintiff sufficiently alleged misappropriation of trade secrets.  Whether Plaintiff can prevail on the issue remains to be seen, but the Court does not make this determination on a Motion to Dismiss. Impact's objection is overruled.

### 4.    Objections related to Unfair Competition

The unfair competition claim is pled in the alternative to the misappropriation claim in the event it is determined that the confidential information improperly acquired by Impact and the individual defendants does not rise to the level of a trade secret under A.R.S. § 44-401. *See Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 337 P.3d 545, 550 (2014); Order (Doc. 53) at 7.

1    Thus, for the same reasons that Impact's objections are overruled as to the trade

2 secrets claim, they are overruled as to the claim for unfair competition.

3    Accordingly,

4 **IT IS ORDERED:**

5    (1)    The Court adopts the R & R (Doc. 82).

6    (2)    Defendant Impact Partnership's Motion to Dismiss the Second Amended

7 Complaint (Doc. 55) is denied.

8    (3)    This case is referred back to Magistrate Judge Charles R. Pyle for all

9 pretrial proceedings and any reports and recommendations as set forth in 28 U.S.C. §

10 636(b)(1) and L.R.Civ.P. 72.1 and 72.2. All future filings in this case shall be designated:

11                              **14-CV-02025-TUC-CKJ (CRP).**

12    Dated this 11th day of March, 2016.

13

14

15

16                              Cindy K. Jorgenson
                                United States District Judge

- 19 -