1  **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8
   Joshua David Mellberg, LLC, et al.,        )
9                                              )
                 Plaintiffs,                   )
10                                             )        No. CIV 14-2025-TUC-CKJ
   vs.                                         )
11                                             )        **ORDER**
   Jovan Will, et al.,                         )
12                                             )
                 Defendants.                   )
13  _____)

14        Pending before the Court are the Individual Defendants' Motion for Partial Summary

15  Judgment (Doc. 329) filed by Defendants Jovan Will, Tree Fine ("Fine"),[1] Fernando Godinez

16  and Carly Uretz (collectively, "Individual Defendants"); Defendants' Motion for Summary

17  Judgment (Doc. 332) filed by Defendant The Impact Partnership, LLC ("Impact")' Plaintiffs'

18  Motion for Summary Judgment on the Impact Partnership's Counterclaim (Doc. 333) filed

19  by Plaintiffs Joshua David Mellberg ("Mellberg") and J.D. Mellberg Financial ("JDM");

20  Plaintiffs' Motion for Partial Summary Judgment Against Defendant Fine on the Fourth

21  Claim for Relief (Doc. 338); Defendants Fine and Godinez's Counter-Motion for Partial

22  Summary Judgment on the Fourth Claim for Relief (Doc. 365); Defendant Jovan Will's

23  Motion for Partial Summary Judgment on Sixth Claim for Relief RE: Alpha Advisor

24  Academy Damages (Doc. 453), and; Defendants' Motion for Summary Judgment on

25  Damages (Doc. 455) filed by Impact.  Also pending before the Court are Defendants' Motion

26  to Strike JDM's Newly-Submitted Reply Evidence (Doc. 448) filed by Impact; Defendant

27

28        _____

          [1]Tree Fine is also referred to as Tree Fine-Hardesty in some documents.

Impact's Motion to Disqualify Michele Bush (Doc. 450); Plaintiffs' Motion for Spoliation Sanctions (Doc. 382), and; Impact's Motion for Attorneys' Fees and Expenses (Doc. 479). Further pending before the Court are the Motions to Supplement the Record (Docs. 539, 545) filed by Plaintiffs. Responses (Docs. 543, 553), Replies (Docs. 544, 555), and a Joinder (Doc. 549) have been filed.

On November 25, 2019, Magistrate Judge Lynnette C. Kimmins issue a Report and Recommendation (Doc. 531) in which she recommends the District Court, after its independent review of the record, grant summary judgment to Defendants on all claims in Plaintiffs' Second Amended Complaint and to Plaintiffs on Defendant Impact's counterclaim. In making this recommendation, Judge Kimmins addresses the substance of only some of the pending motions; she recommends this Court deny as moot the remaining motions, or portions thereof, as not necessary to full resolution of the case.

Plaintiffs and Impact have filed Objections (Docs. 541, 542) and then Responses to the Objections (Docs. 546, 547). Individual Defendants also filed a Response to Plaintiffs' Objection (Doc. 548) and joined Impact's Response to Plaintiffs' Objection (Doc. 549).

Oral argument has been requested. However, the Court finds it would not be assisted by oral argument and declines to set this matter for a hearing. *See generally* LRCiv. 7.2(f); 27A Fed.Proc., L. Ed. § 62:367 ("A district court generally is not required to hold a hearing or oral argument before ruling on a motion.").

I. *Impact's Motion for Attorneys' Fees and Expenses* (Doc. 479)

The Court previously granted Impact's motion to exclude expert damages evidence. Impact requests an award for attorneys' fees and costs for "(1) deposing Plaintiffs' late-disclosed expert witness Paul Crooks twice; (2) preparing and arguing their successful motion to exclude (Doc. 310); and (3) preparing [the motion for attorneys' fees and expenses.]" Motion, p. 2 (Doc. 479).

Rule 37 is a mechanism that a party can employ to obtain documents subject to disclosure. *See generally* Fed.R.Civ.P. 37. Sanctions for failure to comply with disclosure

requirements may include an award of attorneys' fees and costs. *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir.1980). Indeed, district courts are given to issue sanctions because subsection Rule 37(c)(1) recognizes a broadening of the sanctioning power. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1245 (9th Cir. 2012), *citations omitted*. The applicable rule states that an award of attorneys' fees and costs may be made "[i]n addition to or instead of" of the sanction of exclusion. Fed.R.Civ.P. 37(c)(1).

Here, the Court has already sanctioned Plaintiffs for the disclosure failures by excluding the evidence. Although the Court has the discretion to impose an additional sanction, the Court declines to do so. The Court will deny this request.

## II. *Report and Recommendation Standard of Review*

The Court has reviewed the pending motions for summary judgment (Docs. 329, 332, 333, 338, 365, 453, 455), responses, and replies. The Court has also reviewed the Objections (Docs. 541, 542), responses, and joinder. Plaintiffs have alleged claims involving an alleged misappropriation of its trade secrets and confidential information by Defendants. Magistrate Judge Kimmins recommends this Court reject Plaintiffs' allegations due to their inability to provide evidentiary support for the damages they allegedly suffered.

The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections - the Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instruction." Fed.R.Civ.P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

III.  *Background*

Plaintiffs allege a variety of claims in their Second Amended Complaint, but the claims all involve allegations that Individual Defendants, who were former JDM employees, misappropriated trade secrets and confidential information and utilized that proprietary information to establish Impact, a business that competes directly with JDM.

In connection with Plaintiffs' allegations, Defendants filed four motions for summary judgment. Defendant Will filed a Motion for Partial Summary Judgment on Claim 6 (Doc. 453). Defendants Will and Fine jointly filed a Motion for Partial Summary Judgment on Claim 1, 5, 6, 7, and 8 (Doc. 329).  Individual Defendants and Impact filed a Motion for Summary Judgment on Claims 2, 3, 9, and 10 (Doc. 332).  Individual Defendants and Impact filed a Motion for Summary Judgment on all Claims excluding Claim 6 (Doc. 455). Plaintiffs and Defendants Fine and Godinez filed cross-motions for summary judgment on Claim 4 (Docs. 338, 365).  Additionally, Plaintiffs filed a Motion for Summary Judgment on Impact's Counterclaim (Doc. 333).

Further, Plaintiffs filed a Motion for Spoliation Sanctions (Doc. 382); in response to the briefing of that motion, Impact filed a Motion to Strike Evidence submitted by Plaintiffs and a Motion to Disqualify Michele Bush as a witness for Plaintiffs (Docs. 448, 450).

The motions were fully briefed prior to argument before the magistrate judge.  After oral argument, however, the magistrate judge requested supplemental briefing as to Claim 6 (Docs. 513, 516, 517) and Defendants' request for Rule 37 sanctions regarding Plaintiffs' damages (Docs. 518, 521, 522).   After the magistrate judge issued her Report and Recommendation, Plaintiffs filed two Motions to Supplement the Record (Docs. 539, 545).

IV.  *Motions to Supplement the Record* (Docs. 539, 545)

Plaintiffs seek to supplement the record with excerpts of the deposition testimony of Tree Fine-Hardesty, Mark Alan Gailey ("Gailey"), and Mellberg, and an excerpt of the 30(b)(6) deposition testimony of Edward Williams.  Plaintiffs also seek to supplement the

1  record with  a December 23, 2019, Mellberg Declaration.[2]

2  The Ninth Circuit has determined that "a district court has discretion, but is not

3  required, to consider evidence presented for the first time in a party's objection to a

4  magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir.

5  2000).  The court stated:

> [A]ffording district courts discretion to consider new evidence makes prudential
> sense.  The magistrate judge system was designed to alleviate the workload of district
> courts.  *See [Paterson–Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
> 840 F.2d 985, 990 (1st Cir.1988)].   To require a district court to consider evidence
> not previously presented to the magistrate judge would effectively nullify the
> magistrate judge's consideration of the matter and would not help to relieve the
> workload of the district court. "Systemic efficiencies would be frustrated and the
> magistrate judge's role reduced to that of a mere dress rehearser if a party were
> allowed to feint and weave at the initial hearing, and save its knockout punch for the
> second round." *Id*. at 991; *see also Anna Ready Mix, Inc. v. N.E. Pierson Const. Co.,
> Inc.*, 747 F.Supp. 1299, 1302 (S.D.Ill.1990).  Equally important, requiring the district
> court to hear evidence not previously presented to the magistrate judge might
> encourage sandbagging.  "[I]t would be fundamentally unfair to permit a litigant to
> set its case in motion before the magistrate, wait to see which way the wind was
> blowing, and—having received an unfavorable recommendation—shift gears before
> the district judge." *Paterson–Leitch Co.*, 840 F.2d at 991.

*Howell*, 231 F.3d at 622.  In determining whether to allow supplementation of the record,

courts consider several factors, including the moving party's reasons for not originally

submitting the evidence, the importance of the omitted evidence to the moving party's case,

whether the evidence was previously available to the nonmoving party when presenting its

arguments to the magistrate judge, and the likelihood of unfair prejudice to the nonmoving

party if the late evidence is accepted. *See e.g., Viahart, LLC v. Does 1-54*, No.

6:18-CV-00604-RWS, 2019 WL 2127307, at *1 (E.D. Tex. May 15, 2019); *see also Howell*,

231 F.3d at 621-23 (considering whether moving party had opportunity to present the

evidence to magistrate judge and finding reason for failure "wholly unsatisfactory").

---

[2]Plaintiffs also seek to supplement the record with their Second Supplemental Disclosure dated September 22, 2017 (Doc. 539, Ex. F).  However, after Impact pointed out in its response that this document is already part of the record, Plaintiffs acknowledged this document is part of the record.  The Court will deny the Motion to Supplement as to this document.

- 5 -

A. *Doc. 539, Exhibits A-E*

As to the evidence in existence at the time of the summary judgment briefing and the issuance of the R & R, Plaintiffs had more than ample opportunity to include additional facts into the record.  These facts were available to Plaintiffs, yet Plaintiffs chose to not include them in the briefing.  It is only after the magistrate judge issued her R & R that an attempt to supplement the record was made.

Plaintiffs argue supplementation of the record is appropriate because Plaintiffs could not have anticipated the magistrate judge would be so misled by Defendants' selective presentation and misleading characterizations of the evidence regarding the uploading of data and the deletion of data.  However, this argument is not well-taken.  It is clear from the briefs, oral argument, and R & R that these issues were hotly contested and Plaintiffs could have and should have presented all relevant evidence regarding these issues before a ruling or, as in this case, the issuance of a report and recommendation.  This situation is no different from a party deciding evidence is not needed to establish a fact at trial and, when the fact-finder rules against that party, that party seeks a new trial.  In neither situation is it appropriate to grant the party a "second bite at the apple."  *See e.g., United States v. Bransen*, 142 F.2d 232, 235 (9th Cir. 1944) ("Subsequent discovery of the importance of evidence which was in the possession of applicant for new trial, at the time of the trial, does not entitle him to a new trial upon the ground of newly discovered evidence.  The application for a new trial will be denied where it appears that the degree of activity or diligence which led to the discovery of the evidence after the trial would have produced it had it been exercised prior thereto."), *citations omitted*; *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 799 (8th Cir. 2019) (Party's "realization after reading the magistrate judge's recommendation that she had failed to introduce all of the evidence she needed to survive summary judgment is not a particularly persuasive ground for convincing a district court to accept new evidence."); *Blight v. City of Manteca*, No. CV 2:15-2513 WBS AC, 2017 WL 1075496, *2 (E.D. Cal. Mar. 22, 2017) (declining to consider new exhibits that were not brought to the magistrate court's attention prior to the hearing and ruling); Wright, Miller, & Marcus, Federal Practice

and Procedure, 12 Fed. Prac. & Proc. Civ. § 3070.2 (3d ed. April 2020).

Additionally, citing to *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014), Plaintiffs argue the Court should exercise its discretion to consider the supplemental evidence because the evidence is clearly within the scope of the Rule of Completeness and will serve to correct a misleading impression.  However, neither *Vallejos* nor any other case relied upon by Plaintiffs addresses whether the Rule of Completeness provides a basis to supplement a record following the issuance of a Report and Recommendation.  Indeed, the Rule of Completeness addresses whether a statement is admissible, not whether the statement should procedurally be considered.  Had the evidence in the record provided a misleading impression, such evidence could have been submitted before the magistrate judge, either through the Rule of Completeness or other evidentiary basis.  *See e.g.,* 1 Federal Trial Handbook: Criminal § 28:3 (4th ed. 2019) ("The rule of completeness is intended to reduce the inherently misleading nature of a partial submission of a writing or statement, and *recognizes the inadequacy of attempting to provide that completeness later in the trial*."), *emphasis added*.  Indeed, the applicable rule provides for the admission of the complete evidence at the time all or part of a writing or recorded statement is admitted.  *See* Fed.R.Evid. 106.

The Court will deny the request to supplement the record with Doc. 539, Exhibits A-E and Doc. 545, Ex. 1, as these exhibits could have, but were not, presented to the magistrate judge.

## B. *Doc. 539, Ex. G*

As to the December 13, 2019, declaration of Mellberg, Plaintiffs assert this is new evidence, which could not have been discovered with reasonable diligence, of Defendants' continuing use of JDM trade secret and confidential information in Defendants' possession to unfairly compete against JDM.  Plaintiffs argue the declaration provides evidence that, contrary to the magistrate judge's finding that no Defendant had competed directly against JDM unfairly in the last five years, Will continues to directly compete against JDM by

providing a competing "annuity leads program."[3] Plaintiffs argue the emails, included as Ex. 1 to the declaration, are circumstantial evidence that Will used or disclosed JDM's trade secrets. However, Plaintiffs again argue they could not have anticipated the need to demonstrate Defendants were continuing to use JDM's trade secrets.

In other words, Plaintiffs are implicitly acknowledging the evidence is not newly discovered. Indeed, Defendants state:

> Defendants can show that JDM had signed up to receive the marketing emails from Mr. Will's venture since at least February of 2015. There is nothing new about Advisor Internet Marketing. Mr. Will has operated it since 2015. It was discussed in discovery in this case. Defendants had more than adequate opportunities to present evidence to support their claims, and the record should be closed in accordance with the Court's summary-judgment briefing schedule.

Response, p. 10 (Doc. 543). While the specific emails were sent after the issuance of the R & R,, there is no basis to conclude the information included in these specific emails differed from emails received by JDM from at least February 2015. Although Plaintiffs argue this evidence shows Will continues to compete with JDM to this day, they do not adequately provide any reason why they, instead, are unable to point to any evidence included in the record that addresses this issue.

Plaintiffs also argue this evidence disputes the magistrate judge's finding that, "because there is no evidence Defendants are using JDM's trade secrets, there is no threat of future harm." Reply, p. 7 (Doc. 544). Mellberg's declaration includes repeated use of the word "appears" in referring to the emails. Although Plaintiffs argue this constitutes circumstantial evidence, the Court finds such evidence is speculative and conjecture. Indeed, this "circumstantial evidence" only leads to Mellberg's speculation and conjecture that Will is in possession of JDM's trade secret and confidential information, Defendants' "annuity leads program" is JDM's "annuity leads program" or that Defendants' "annuity leads program" was developed using JDM's trade secrets. *See Burdette v. Steadfast Commons II,*

---

[3]In arguing in support of supplementing the record, Plaintiffs do not address the fact that the magistrate judge's conclusion was that Defendants had not competed directly against JDM *unfairly* in the last five years.

1  *LLC*, No. C11-0980RSM, 2013 WL 127610, at *3 (W.D. Wash. Jan. 9, 2013) ("if

2  circumstantial evidence leads only to speculation, a verdict cannot be based on the

3  inferences"); *see also Sealey v. Busichio*, 696 F. App'x 779, 781 (9th Cir. 2017); *Carmen v.*

4  *San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) (a party's "belief . .

5  . without evidence supporting that belief, is no more than speculation or unfounded

6  accusation . . . It is not enough for a witness to tell all she knows; she must know all she

7  tells."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (where affidavit stated facts to

8  which affiant was informed and believed, a triable issue was not raised; such "statement

9  would have to be made on personal knowledge, not information and belief"); Fed.R.Civ.P.

10  56(c)(4) (evidence must be based on personal knowledge).

11        Plaintiffs need not establish a material issue of fact conclusively in their favor and

12  must simply show a factual dispute sufficient to "require a jury or judge to resolve the parties'

13  differing versions of the truth at trial." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d

14  865, 872 (9th Cir. 2007), *citation omitted*.  Mellberg's declaration does not show any

15  continuing use or threat of misappropriation.   Further, it does not identify what specific

16  information Plaintiffs assert is the trade secret allegedly misappropriated.   Mellberg's

17  conclusory statements do no create an issue of material fact in dispute. *See Protective Life*

18  *Ins. Co. v. Mizioch*, No. 2:10-CV-01728-PHX, 2011 WL 3583199, at *2 (D. Ariz. Aug. 12,

19  2011) (rejecting newly-discovered, hearsay evidence because it did not create a material issue

20  of fact).  The Court will deny Plaintiffs' request to supplement the record with Mellberg's

21  declaration.

22

23  C.  *Doc. 545, Ex. 1 and Doc. 553, Exs. 1, 2*

24        The parties disagree as to the characterization of this evidence, but agree to

25  supplement the record with it.  The Court will grant the request to supplement the record with

26  this evidence.

27

28

V.  *Plaintiffs' Objections* (Doc. 541)

Plaintiffs object to factual conclusions reached by the magistrate judge.   In considering a motion for summary judgment, the court is to review the record as a whole, but must disregard evidence favorable to the moving party that the jury is not required to believe and must give credence to the uncontradicted and unimpeached evidence of the moving party, at least "'to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51 (2000) (citation omitted).   Indeed, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

A.  *Destruction and Uploading of Data*

Plaintiffs asserts the magistrate judge erroneously found, "the undisputed evidence establishes that Fine did not direct the deletion of any JDM data." Pl. Obj., p. 1 (Doc. 541). However, when placed in context, this statement is accurate.  During his deposition, Gailey testified as follows:

Q. And then who told you to do anything with those two drives?

A. [Fine].

Q. What did he tell you to do?

A. To wipe the C disk.

Q. What else did he tell you?

A. We worked together to copy the data from the D disk.

Q. And how did you copy the data from the D disk?  You know, how was it copied?  Where was the copy put?

A. I was sitting next to him at the computer, and he selected or I selected, I don't remember which, a number of files, and we put them on a network share, copies, pasted onto a network share.

Q. Did he tell you not to copy anything?

A. Unh-unh.

Q. No?

1        A.     He just said this is what needs to go.

2        Q.     Was everything on the D drive copied?

3        A.     I think most everything, yeah.

4   Gailey dep., p. 52 (Doc. 341-6).  Specifically, when discussing the details, Gailey testified

5   he wiped the C disk (system drive), but the D disk (data drive) remained on the computer.

6   *Id.* at 51-53.  Indeed, upon further questioning, Gailey testified that he only wiped the system

7   drive.  *Id.* at 103.  He also testified that although he sanitized the C drive, he reformatted the

8   D drive.  *Id.* at 134.  When asked if Fine had directed that reformatting, Gailey did not

9   specifically respond to that question:

10        Q.     Did [Fine] tell you to reformat the D drive?  Or is that just something you
11                  would do when a computer is turned in?

     A.     That is something that you would do when you install a new computer in
12                  general is that you would format the drives.

13   *Id.* at 135.  Rather than providing specific details, Gailey's declaration in contrast simply

14   refers to reformatting the hard drives at Fine's direction.  Gailey decl., ¶ 6 (Doc. 385-5).

15   Another district court has summarized:

16       "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by
    an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins.*
17       *Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  The Ninth Circuit has fashioned "two
    important limitations on a district court's discretion to invoke the sham affidavit rule."
18       *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).  First, the rule
    does not apply automatically to every case where a contradictory affidavit is
19       introduced; rather, "the district court must make a factual determination that the
    contradiction was actually a 'sham.'"  *Id.* (quoting *Kennedy*, 952 F.2d at 267).
20       Second, "the inconsistency between a party's deposition testimony and subsequent
    affidavit must be clear and unambiguous to justify striking the affidavit."  *Id.* at
21       998-99.

22   *McGee v. Mercedes-Benz USA, LLC*, — F.Supp.3d —, No. 19CV513-MMA (WVG), 2020

23   WL 1530921, at *3 (S.D. Cal. Mar. 30, 2020); *see also Van Asdale v. Int'l Game Tech.*, 577

24   F.3d 989, 999 (9th Cir. 2009).  Here, Plaintiffs offer no explanation for change.  Further,

25   because the change is from one of specificity to imprecision, the Court finds this

26   contradiction is a sham issue of fact.  However, the Court does not find the inconsistency to

27   be clear and unambiguous such that striking the declaration is appropriate.  Nonetheless, the

28   Court finds the specific statement to be controlling.  Thus, the undisputed evidence

establishes Fine did not direct the deletion of data.  The Court will overrule this objection.

Plaintiffs also argue the magistrate judge erred in determining that it is undisputed that all of the "substantive data on Fine's JDM-issued computer was uploaded to the JDM server[.]" Pl. Obj., p. 2 (Doc. 541).  However, again, when placed in context, this statement is accurate.  As summarized by the magistrate judge:

> According to Gailey, Fine selected specific files from the D drive of his computer (Gailey believed it was most everything on the drive, all the intellectual property and Fine's work product), which they copied to the JDM network share. (Id. at 52, 104-05; Doc. 407-5, Ex. 16 ¶ 5.)

R & R, p. 6 (Doc. 531).  Although Plaintiffs emphasize that Fine told Gailey which files to upload, Gailey's deposition actually indicates Gailey does not recall who selected which files to upload.  Further, Gailey's deposition shows he responded, "I think most everything, yeah[,]" Gailey dep., p. 52 (Doc. 341-6) to an inquiry as to whether everything on the D drive was copied.  Additionally, there is no evidence to suggest that the fact the data may be unrecoverable from the location to which it was copied is the result on any conduct of Fine.  The Court will overrule this objection.

Plaintiffs also argue that, because Fine's credibility has been challenged on specific instances that would certainly cast doubt on the truthfulness of his testimony.  *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013) ("Clearly, if the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial[.]"), *quoting* 10A Wright, Miller & Kane, § 2726, at 446).  "Questions of credibility, of course, are particularly appropriate for jury determination."  *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 968 (9th Cir. 1981), *citing Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 628 (1944).

However, as pointed out by Individual Defendants, there is no evidence in the record to support Plaintiffs' assertion Fine is not credible.  Specifically, Fine's purported statement regarding his involvement, or lack thereof, with Impact, is not included in the record, Further, the deposition testimony of Fine is not in "stark contrast[,]" JDM Obj., p. 3 n. 2

(Doc. 541). to Gailey's testimony.  Rather, although Fine testified he disagreed with Gailey's statement that Fine was the one sitting at the desk backing up the files, he does not state he was not sitting with the person who was backing up the computer.  Fine Dep., pp. 10-11 (Doc. 539-1).  Indeed, he testified he walked with Gailey to the computer and it was clear which files needed to be copied; he further testified he was in the office the day the desk top computer was addressed.

Moreover, the evidence regarding the copying and deletion of files relies heavily on Plaintiffs' witnesses, including Gailey.  In other words, the evidence regarding Fine's credibility is not critical, *Dawson*, 528 F. App'x at 453, and does not make undisputed material facts into disputed material facts.  As stated by the magistrate judge, "[t]he Court is not precluded from relying on testimony from a party that is not contradicted by other evidence; in that case, there is not a genuine issue of material fact precluding summary judgment." R & R, p. 8, n. 3 (Doc. 531), *citing Anderson*, 477 U.S. at 249.  The Court will overrule this objection.

B.  *Denial of Injunctive Relief*

Plaintiffs assert the magistrate judge erred in denying all injunctive relief, which permits Defendants to retain and use JDM's misappropriated trade secret information.  Plaintiffs argue this ignores the threat of misappropriation posed by a direct competitor that remains in possession of trade secret and confidential information it improperly acquired and used to build its competing advertising program.  The magistrate judge recognized:

> Some courts have found a genuine issue of fact regarding whether a defendant poses a risk of future harm when the party continues to possess the plaintiffs' trade secrets and could use them to compete in the future.  *See, e.g., Allergan, Inc. v. Merz Pharms.*, No. SACV 11-446 AG (Ex), 2012 WL 13134616, at *6-7 (C.D. Cal. Feb. 1, 2012) (denying summary judgment as to injunctive relief because defendants could pose a threat based on their continued possession of trade secrets eighteen months after leaving plaintiff's employ); *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co., Ltd.*, No. C 07-05248 JW, 2009 WL 10709718, at *5 (N.D. Cal. Nov. 24, 2009) (noting that the defendants actively used plaintiffs trade secrets only a year prior).

R & R, p. 26 (Doc. 531).  However, the magistrate judge determined there was "no evidence

that, in the last five years, any Defendant competed directly against JDM unfairly or solicited an agent he knew to be associated with JDM." *Cf. Zitan Techs., LLC v. Liang Yu*, No. 3:18-cv-00395-RCJ-WGC, 2018 WL 5045207, at * 4 (D. Nev. Oct. 17, 2018) (collecting cases finding irreparable harm based on "evidence of specific, manifest acts by defendant, such as evidence of utilization or attempted utilization of a plaintiff's trade secrets, evidence of competition with a plaintiff after acquiring a plaintiff's trade secrets, or evidence of solicitation of customers, especially a plaintiff's, after obtaining a plaintiff's trade secrets."); *Gallagher Benefit Servs., Inc. v. De La Torre*, 283 F. App'x 543, 546 (9th Cir. 2008) (finding irreparable injury due to potential loss of customers and goodwill but limiting injunction to the one customer for which there was evidence of wrongful solicitation).

Plaintiffs argue Impact's digital marketing program Annuity Angel was built using JDM's trade secrets and confidential information and that there is no evidence that Impact has ceased using that program. However, Will testified that Annuity Angel ceased operations in 2014. Will Dep., p. 11 (Doc. 490-1); *see also* Odom Decl. ¶ 10 (Doc. 343-3); Will Aff. ¶ 6 (Doc. 397-2); Godinez Dep. pp. 309-310 (Docs. 346-3). The record does not include any evidence to dispute this fact. Further, as stated by the magistrate judge:

> [A]ny harm arising from Defendants' alleged actions related to Annuity Angel are complete and the only remedy available is monetary damages. *See TDBBS LLC v. Ethical Products Inc.*, No. CV-19-01312-PHX-SMB, 2019 WL 1242961, at *7 (D. Ariz. Mar. 18, 2019) (noting that injunctions are to "prevent future use of trade secret information" not to remedy a past wrong); *KWB and Assocs., Inc. v. Marvin*, No. ED CV 18-289-DMG (KKx), 2018 WL 5094927, at *7 (C.D. Cal. Apr. 18, 2018) (denying injunctive relief because there was no "present or imminent risk of likely irreparable harm").

R & R, p. 25 (Doc. 531).

Although Plaintiffs argue misappropriation of trade secret cases are routinely proven by circumstantial evidence alone, Plaintiffs only provides speculation as to actual or threatened future irreparable harm.

Specifically, Plaintiffs argue evidence from the *Buckner* litigation provides circumstantial evidence of Impact's propensity for trade secret misappropriation. However, the Court agrees with the magistrate judge that the *Buckner* litigation is not relevant to this

- 14 -

case:

> JDM contends Impact has a "track record" of using competitors' trade secrets. To support this allegation, JDM relies on a case called *Allianz v. Buckner*, No. 0:13-cv-03193 (D. Minn.).  Buckner worked for Allianz and then became an employee of Impact from August 2013 to May 2014.  Buckner ultimately entered a consent injunction to resolve the matter.  Impact was not a defendant in the *Buckner* case but agreed to return or destroy any Allianz material that Buckner had transferred to Impact. (Doc. 385-5, Ex. 58 ¶ 7.)  Because Impact was not a party to the *Buckner* case, its culpability with respect to Buckner's wrongdoing was not litigated. For that reason, the Court will not draw any inferences about Impact's intentions based on *Buckner*.

R & R, p. 25, n. 10 (Doc. 531).

Moreover, there is no evidence in the record that, since Annuity Angel ceased operation, any Defendant has used or disclosed any confidential information or trade secrets of JDM.  In fact, there is no evidence any Defendant unfairly competed directly against JDM or solicited an agent he knew to be associated with JDM.  Another district court has summarized:

> [C]ourts have denied injunctive relief where plaintiffs have failed to provide evidence to support the proposition that irreparable harm is likely rather than possible. *E.g., Dahl v. Swift Distribution, Inc.*, No. CV 10-00551 SJO(RZX), 2010 WL 1458957, at *11 (C.D. Cal. Apr. 1, 2010) (holding that a plaintiff did not demonstrate that irreparable harm was likely, because the plaintiff did not provide specific, concrete evidence to support its claim trademark infringement would harm its reputation, goodwill, sales, profit margins, and lead to a loss of customers).  In one salient example, a court of this District denied a motion for a temporary restraining order after a defendant solicited one of a plaintiff's customers after obtaining confidential information, because the court held that a single instance of solicitation was not enough to prove that the solicitation would continue and therefore that irreparable harm was likely.  *Wells Fargo Clearing Services, LLC v. Foster*, No. 3:18-cv-00032-MMD-VPC, 2018 WL 1746307, at *3 (D. Nev. Apr. 11, 2018).

*Zitan Techs., LLC v. Liang Yu*, No. 318CV00395RCJWGC, 2018 WL 5045207, at *4 (D. Nev. Oct. 17, 2018).  Here, Defendants' conduct with Annuity Angel ended more than five years ago.  Where the injury to a plaintiff has ceased, a plaintiff carries a weighty burden to show that future injury is likely. *Prison Legal News v. Babeu*, No. CV 11-01761-PHX-GMS, 2013 WL 1832080, at *3 (D. Ariz. May 1, 2013), *aff'd*, 552 F. App'x 747 (9th Cir. 2014), *citing Nelsen v. King Co.*, 895 F.2d 1248, 1251 (9th Cir.1990).  Indeed, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,*

414 U.S. 488, 495–96 (1974).  In making its claim that Defendants continue to possess confidential information and trade secrets, Plaintiffs do not point to any present adverse effects.

Additionally, although Plaintiffs filed a request for a preliminary injunction prior to this matter being removed to federal court, Plaintiffs took no actions to pursue or seek a ruling from the federal court as to the requested injunctive relief.  *Open Text, S.A. v. Box, Inc.*, 36 F. Supp. 3d 885, 909 (N.D. Cal. 2014) (finding delay in seeking relief, without explanation, undermined claim of irreparable harm); *see also Hastings v. Bank of Am. NA*, No. CV-13-00834-PHX-GMS, 2013 WL 6118680, at *5 (D. Ariz. Nov. 21, 2013) (declining to consider the merits of pending motions filed in state court for failing to comply with LRCiv 3.6(c)).  Although Plaintiffs' Second Amended Complaint included a request for both preliminary and permanent injunctive relief, Plaintiffs did not refile or reurge this request for preliminary injunctive relief after the filing of the Second Amended Complaint.  *Roberts v. Veterans Vill. Enterprises, Inc.*, No. 17CV524-LAB (MDD), 2017 WL 1063477, at *2 (S.D. Cal. Mar. 20, 2017) ("Delays in seeking relief are considered when determining whether preliminary injunctive relief should be granted."), *citations omitted*.

A "clear showing" of likely harm has not been made, *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); Plaintiffs' speculative injury is insufficient.  *Goldies Bookstore, Inc. v. Superior Court*, 739 F. 2d 466, 472 (9th Cir. 1984) (finding a party's alleged loss of goodwill and "untold" customers was not based on any factual allegations and appeared speculative, which does not constitute irreparable injury).

The Court agrees with the magistrate judge:

> JDM fails to establish it will suffer irreparable harm without a permanent injunction. Therefore, JDM would not be entitled to injunctive relief even if it established that Defendants misappropriated trade secrets or confidential information in 2013 and/or 2014.

R & R, p. 27 (Doc. 531).  The Court will overrule this objection.

C.  *Sixth Claim:  Breach of Duties Re:  Alpha Academy Advisors, LLC*

The sixth claim of the Second Amended Complaint alleges Will breached his duties to Mellberg as a member of Alpha Advisors Academy, LLC. ("AAA").  Plaintiffs argue the magistrate judge improperly recommended dismissal based on an affirmative defense that was never raised by Will.  Indeed, "as a general rule, our [judicial] system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" *United States v. Sineneng-Smith*, No. 19-67, 2020 WL 2200834, at *3, 140 S.Ct. 1575 (2020), *citation omitted*.  However, there are "circumstances in which a modest initiating role for a court is appropriate."  *Id*., *citing Day v. McDonough*, 547 U. S. 198, 202 (2006) (federal court had "authority, on its own initiative," to correct a party's "evident miscalculation of the elapsed time under a statute [of limitations]" absent "intelligent waiver").

In this case, the nature of this claim against Will has changed throughout the litigation.  In directing supplemental briefing, the magistrate judge summarized as follows:

> In the Second Amended Complaint, Plaintiffs Joshua Mellberg alleged that Defendant Jovan Will breached his duty to Mellberg as the other member of Alpha Advisor Academy, LLC (AAA) (Claim 6).  (Doc. 54 at 40-41.)  Will filed a motion for summary judgment on Claim 6 arguing that, under Arizona law, members of an LLC do not owe one another fiduciary duties. (Doc. 329 at 11-12.)  In response, Mellberg altered his theory and argued that, as the manager of AAA, Will owed a duty to the LLC. (Doc. 406 at 14-16.)  Will did not contest Mellberg's alteration to the substance of the claim; therefore, the Court treats Claim 6 as alleging that Defendant Will breached his fiduciary duty as the manager of AAA.

September 17, 2019, Order, p. 1 (Doc. 513), *footnote omitted*.  Yet, in their supplemental brief, Plaintiffs asserted, "Claim Six is a direct, not a derivate, claim Mr. Mellberg has against Defendant Will" based on an alleged breach of fiduciary duties Will owed directly to Mellberg and the damages directly and individually suffered by Mellberg caused the breach.  Pl. Supp. Brief, p. 1 (Doc 517).

Fed.R.Civ.P. 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell*

- 17 -

1   *Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), *internal quotations omitted*.  Although the

2   statutory precondition for bringing a derivative suit is waivable, A.R.S. § 29-831(2)(3), the

3   Court cannot find Will waived the defense where the SAC failed to provide adequate notice

4   to Will of the claim.  The Court will overrule this objection.

5        Plaintiffs also argue Will, as a close personal friend of Mellberg, owed a fiduciary

6   duty to Mellberg.  In making this argument, Plaintiffs cite to *Albers v. Edelson Tech.*

7   *Partners L.P.*, 201 Ariz. 47, 52, 31 P.3d 821, 826 (App. 2001), in which the court stated,

8   "while corporate officers and directors are generally shielded from liability for acts done in

9   good faith on behalf of the corporation, their status does not shield them from personal

10  liability to those harmed as a result of intentionally harmful or fraudulent conduct."

11  However, as *Albers* is discussing individual conduct by a corporate officer, Mellberg's claim

12  based on a personal friendship does not fall within this principle.  Moreover, the Court can

13  find no basis to conclude such a claim was alleged in the SAC.  The Court will overrule this

14  objection.

15       Plaintiffs also assert Will, as the manager of AAA, owed Mellberg, the only other

16  member of AAA, a fiduciary duty.  Plaintiffs argue that "the LLC Act imposes common law

17  fiduciary duties on managers and members serving as agents of the LLC."  *In re Sky Harbor*

18  *Hotel Properties, LLC*, 246 Ariz. 531, 443 P.3d 21, 24 (2019).  However, this duty is owed

19  to the LLC; the Court agrees with the magistrate judge that "there is no Arizona case holding

20  that a man[a]ger owes fiduciary duties to members of an LLC."  R & R, p. 29 (Doc. 531).

21       Nonetheless, in reliance on the *Restatement (Second) of Torts* § 874 cmt. a., Plaintiffs

22  argue common law imposes a duty owed to members of an LLC.  Plaintiffs point out that the

23  Court of Appeals of Arizona relied on this provision in *Sports Imaging of Arizona, L.L.C.*

24  *v.1993 CKC Tr.*, No. 1 CA-CV 05-0205, 2008 WL 4448063, at *19 ( App. Sept. 30, 2008).

25  However, this unpublished case does not provide any precedential value.  R.Sup.Ct.Ariz.

26  111(c)(1)(C).  Moreover, when more recently considering the duties of an LLC member to

27  another member, the Court of Appeals did not rely upon the Restatement.  In *TM2008*

28  *Investments, Inc. v. Procon Capital Corp.*, 234 Ariz. 421, 424–25, 323 P.3d 704, 707–08

(App. 2014), the court determined that it was not appropriate to mechanically apply fiduciary duty principles to an LLC created under Arizona law.  Rather, the court considered the operating agreement in determining the scope of duties owed by and between members of the LLC.  This authority is "not to be disregarded in the absence of convincing indications that the state supreme court would hold otherwise."  *GEICO Gen. Ins. Co. v. Tucker*, 71 F. Supp. 3d 985, 987 (D. Ariz. 2014), *quoting Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir.1991) (stating that, in the absence of state supreme court authority, decisions of state courts of appeal, other state-court decisions, well-reasoned decisions from other jurisdictions, other available authority may provide guidance and instruction).  Further, although Plaintiffs rely on *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 197 Md. App. 586, 616, 14 A.3d 1193, 1210 (2011), to support his assertion that "managing members of LLCs owe common law fiduciary duties to the . . . other members[,]" the *Kay* court made this statement without any discussion or consideration of any operating agreement.  The Court finds the well-reasoned *TM2008* case provides better guidance.

Here, the record does not include any governing operating agreement.  The Arizona Limited Liability Company Act provides that a "manager . . . holds the office and has the responsibilities that are accorded to him by the members and that are provided in an operating agreement." A.R.S. § 29-681.  In other words, the parties could have provided that a manager owed a duty to the other member(s), but chose not.

To any extent the operating agreement, which was not signed by Will, provides guidance as to the intent of the parties, the operating agreement provides:

> 2.4 <u>Liabilities</u>.  The members intend and agree that insofar as their relative rights and duties to each other are concerned, the following statements of liabilities shall govern:
>
> (a) <u>Of Assignee and Assignors:</u> If a Member assigns his interest in the Company and the assignee assumes the obligations and duties of the assignor under this Agreement, then such assumption shall inure to the benefit of the Company and shall be binding upon the assignees.  However, the assignor shall also remain liable to the Company for all debts and obligations of the assignor as a Member unless and until the remaining Members unanimously consent to absolve the assignor of any further liability to the Company.

Operating Agreement, p. 14 (Doc. 378-10).  The members could have, but chose not to,

1  include a duty and/or liability to each other.  The Court finds Mellberg and Will did not agree

2  Will would owe fiduciary duties to Mellberg individually.

3        The Court will overrule this objection.

4

5  D.  *Damages as to Unjust Enrichment*

6        Plaintiffs assert the magistrate judge erred in determining that Plaintiffs' unjust

7  enrichment claim was tied to Defendants' profits.  Rather, Plaintiffs assert the claim is also

8  as to development costs.  However, whether tied solely to Defendants' profits or also to

9  development costs, the Court agrees with the magistrate judge that Plaintiffs did not

10 adequately or timely disclose the damages.  The magistrate judge discussed a damages

11 summary disclosed by Plaintiffs which "did not provide a computation for unjust enrichment

12 damages."  R & R, p. 11 (Doc. 531).  She also pointed out that Mellberg was designated as

13 an expert witness to testify as to damages.  However, Mellberg's testimony did not include

14 discussion of Impact's saved development costs.  *See* Mellberg Dep., pp. 121-50 (Doc. 507-

15 2).

16       Plaintiffs argue the damages disclosure as to Plaintiffs' $30 million estimated cost of

17 development was timely made.  *See* SAC, ¶ 85 (Doc. 54) and Plaintiffs' Rule 26(a)(1)(A)

18 Initial Disclosure, p. 9 (Doc. 317-1).  It asserts "the cost to develop the data is the Cost to

19 Create and more importantly, Defendants are keenly aware of that fact."  Pl. Obj., p. 11 (Doc.

20 541).   However, neither in the SAC nor in the Initial Disclosure was this cost to create

21 alleged to equate to the cost of development.  (Docs. 54, 507-2).  Moreover, during his

22 deposition, when asked about damages, Mellberg gave general, conclusory answers and

23 deferred to Lynton Kotzin's expert report and Paul Crooks' damages computations. *See, e.g.*,

24 Mellberg Dep., pp. 135:3-136:15, 145:25-146:3 (Doc. 507-2).

25       While the Court agrees with Mellberg that Plaintiffs did not necessarily limit

26 themselves to pursuing unjust enrichment through expert testimony, the Court agrees with

27 the magistrate judge that the evidence in the record does not "put Defendants on notice to

28 defend against  "a claim for unjust enrichment based on saved development costs for the

1   trade secret." R & R, p. 14 (Doc. 531). Further, "JDM violated Rules 26(a)(1)(iii) and

2   26(e)(1)'s requirement to timely disclose and supplement damages computations." *Id.* at 15.

3

4   E. *Fed.R.Civ.P. 37 Sanction*

5          If a party fails to provide a computation of each category of damages and supporting

6   evidentiary material, that "party is not allowed to use that information or witness to supply

7   evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified

8   or is harmless." Fed.R.Civ.P. 37(c)(1); *see also* Fed.R.Civ.P. 26(a)(1(A)(iii). This sanction

9   is a "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure

10  of material . . ." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.

11  2001); *see also* Fed.R.Civ.P. 37 Advisory Committee Note (1993).

12         Plaintiffs argue their actions were substantially justified and not willful because they

13  had a good faith belief the computation for the cost to create sufficiently complied with

14  Fed.R.Civ.P. 26. They further argue the good faith belief was supported by the fact that

15  Defendants did not raise the issue. However, in its Rule 26(a)(1)(A) Initial Disclosure,

16  Plaintiffs stated they would "not be able to calculate the amounts for [unjust enrichment

17  damages] until after conducting discovery of Defendants[.]" Pl. Init. Disc., p. 8 (Doc. 317-1).

18  Yet, despite acknowledging this incomplete discovery, Plaintiffs did not come forward with

19  a calculation for damages alleged to be based on unjust enrichment to Defendants based on

20  this theory. While there is no evidence to conclude "Plaintiffs initially acted in bad faith or

21  that their initial failure to disclose was willful. . ., Plaintiffs' continued failure to meet their

22  Rule 26 obligations eventually became willful after sufficient time passed." *Popovic v.*

23  *Spinogatti*, No. CV-15-00357-PHX-JJT, 2016 WL 2893426, at *10 (D. Ariz. May 18, 2016).

24         Plaintiffs also argue Defendants were not prejudiced by Plaintiffs' late disclosure, i.e.,

25  that the failure to timely disclose damages material was harmless. Plaintiffs assert the cost

26  to create has always been at issue in this case and Defendants even deposed Kotzin regarding

27  the cost to create. However, as previously discussed, neither in the SAC nor in the Initial

28  Disclosure was the cost to create alleged to equate to the cost of development. (Docs. 317-1,

507-2).  As pointed out by Impact, it was "prejudiced by litigating this case for years, only to have Plaintiffs submit a new damages calculation well after discovery had closed (and only in response to Defendants' dispositive motion).  Impact Resp., pp. 5-6 (Doc. 547).  Moreover, as discussed by the magistrate judge, Defendants have identified areas of the opinions of Mellberg and Kotzin to which Defendants have been denied an opportunity to develop a defense.  R & R, p. 19 (Doc. 531).

Citing to *Schneider v. Cty. of San Diego*, 28 F.3d 89, 92 (9th Cir. 1994), *as amended* (due process rights are violated when notice and an opportunity to be meaningfully heard is not given prior to deprivation of a protectable interest), Plaintiffs argue harsh terminating sanctions violate due process., Plaintiffs fail to acknowledge that Defendants did not raise the issue as to the $27.7 million cost of development allegations until their Summary Judgment Reply brief because it was not clear until that time that Plaintiffs were asserting they had adequately disclosed this calculation as unjust enrichment damages as to Defendants' cost of development.  Moreover, Plaintiffs do not state any reason why they did not request leave to file a sur-reply and/or adequately present argument regarding this issue during the September 12, 2019, hearing.  Further, although Plaintiffs assert the opportunity to present supplemental argument in a five page brief was limited to the issue of willfulness, the magistrate judge's Order directed the parties to brief "what sanction would be most appropriate."  October 7, 2019, Order, p. 2 (Doc. 518).  The plain language of Fed.R.Civ.P. 37(c)(1) states that, whether a failure to disclose was substantially justified or harmless is to be considered in determining whether the party is allowed to use the evidence.  In other words, the magistrate judge's Order necessarily allowed for briefing of substantial justification.  Indeed, the magistrate judge's Order also  stated it would not "preclude the evidence without evaluating Plaintiffs' culpability."  *Id.* at 2, n. 2.

Plaintiffs also argue the terminating sanctions are unjust because Defendants did not challenge the adequacy of Plaintiffs' damages disclosure.  Plaintiffs assert the magistrate judge incorrectly found *Lemon v. Harlem Globetrotters, Int'l, Inc.*, Nos. CV 04-0299-PHX-DGC, CV 04-1023-PHX-DGC, 2006 WL 3524379 (D. Ariz. Dec. 6,

2006).and *Excel Fortress Ltd. v. Wilhelm*, No. CV-17-04297-PHX-DWL, 2019 WL 2503684, (D. Ariz. June 17, 2019) inapposite because, in this case the magistrate judge had ordered the parties to file a joint document which listed all outstanding discovery disputes. Pl. Obj., p. 13, (Doc. 541), *citing* March 1, 2018, Order (Doc. 189).  However, this was not a discovery dispute, i.e, the parties were not disputing whether one party had an obligation to provide disclosure.  Rather, Plaintiffs simply failed to comply with automatic disclosure requirements.  Plaintiffs seem to be arguing Defendants had a responsibility to advise Plaintiffs of a deficiency in Plaintiffs' case.  That is a basis for a dispositive motion or argument at trial, not a discovery issue.  Moreover, as discussed by the magistrate judge, Defendants "had no reason to believe JDM was pursuing $27 million in unjust enrichment, based on saved development costs for the entirety of JDM's trade secrets, when none of those witnesses disclosed that theory, that number, or a supporting computation."  R & R, p. 17 (Doc. 531).

As summarized by the magistrate judge:

> Although the preclusion of Mellberg's damages computation and related testimony will result in the dismissal of several claims on grounds unrelated to their merit, JDM made the decision not to disclose this readily available computation until long after discovery closed. The computation is related to the heart of its allegation of misappropriation; thus, JDM was long on notice of the need to disclose any and all computations for damages arising from these allegations. As this late-disclosed computation is the only support JDM has proffered to prove monetary damages as to Defendants' alleged misappropriation, the entirety of Claims 1-5 and 7-10, that are not premised on Fine's destruction of data, fail.

R & R, pp. 23-4 (Doc. 531).  The Court agrees with the magistrate judge; Plaintiffs' objection will be overruled.

F. *Defendants' Destruction of Evidence and Active Concealment of that Destruction*

Plaintiffs object to the magistrate judge's failure to address Defendants' destruction and disposal of relevant evidence during the litigation and their concealment of that destruction.  Plaintiffs state:

> Contrary to the Magistrate's ruling, the issues of Defendants' spoliation are not moot. Indeed, the Magistrate resolved several factual disputes and made factual determinations and inferences in favor of Defendants contrary to the adverse

1    inferences requested by JDM.

2    Pl. Obj, p. 15 (Doc. 541).  However, the Court disagrees.  Rather than drawing inferences in

3    Defendants' favor, the magistrate judge considered whether admissible, relevant evidence

4    in the record presented a material factual dispute.  The Court will overrule this objection.

5

6    VI.  *Defendant Impact's Objections* (Doc. 546)

7         Impact objects to the R & R's recommendation that Impact's false advertising claim

8    be dismissed and the factual finding that Impact has an ownership interest in an investment

9    advisory firm.

10

11   A.  *Impact's False Advertising Counterclaim*

12        Impact claims its false advertising claim is based on one press release that, though

13   slightly modified, was distributed in-person, on the internet, and via email.

14

15   1.  *Analyzing the Versions of the Press Releases*

16        Impact asserts the magistrate judge erred in evaluating the separate versions of the

17   press release separately, but should have consider the advertisement in its entirety.  Indeed,

18   "[w]hen evaluating whether an advertising claim is literally false, the claim must always be

19   analyzed in its full context." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139

20   (9th Cir. 1997); *see also Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir.

21   1986) (courts consider an advertisement in its entirety and do not engage in "disputatious

22   dissection"); *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F.Supp. 2d 339, 345 (S.D.N.Y.

23   2008) (The "entire mosaic" "should be viewed rather than each tile separately.").

24        However, because an injury must flow directly from an audience's belief in a

25   disparaging statement, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118,

26   138 (2014), a disparaging statement in one press release cannot be believed by the audience

27   if it is not published to that audience.  Here, the distribution of the each press release was to

28

1    separate recipients.  The first press release was handed to at least six Impact employees.[4]

2    However, as to the second version of the press release:

> Plaintiffs engaged PRWeb to distribute a slightly different version of the press release to thousands of media outlets online.  (Docs. 369-1 at 4-36, 370-1 at 2-38, 370-2 at 2-38.)  Plaintiffs targeted specific cities (Atlanta, Phoenix, Tucson, Flagstaff, and Prescott), specific audiences (those interested in business, finance, investment or litigation), and specific regional media digests (West and South).  (Doc. 369-1 at 4, 16.)  The press release was published on at least 158 different websites, appeared over 18,000 times in internet searches during the first month, and continues to remain accessible today to anyone with internet access.  (Doc. 369-1 at 11-36, 371-7 at 4, ¶ 11.)

Impact Obj., p. 3 (Doc. 542), *footnotes omitted*.  There is no basis to infer or conclude any disparaging statements in the first version of the press release were published to the recipients of the second press release.

This case does not present a situation where, for example, the two press releases are linked by reference to each other.  *See e.g., Fortress Secure Sols. LLC v. AlarmSIM LLC*, No. 4:17-CV-5058-TOR, 2019 WL 7816820, at *9 (E.D. Wash. Dec. 5, 2019) (the full context of the email "requires consideration of the facts that [plaintiff's] products were referenced by name when consumers clicked the link within the allegedly defamatory email, and that a number of [defendant's] customers were referred to [defendant] directly by [plaintiff]").  Rather, the press releases were two distinct "documents."  Viewing the face of each version of the press release in its entirety, "rather than examining the eyes, nose, and mouth separately and in isolation from each other[,]" *Southland Sod*, 108 F.3d at 1139, involves consideration of each press release, not the other.

The Court agrees with the magistrate judge that evaluation of each press release separately is appropriate.  The Court will overrule this objection.

Impact further argues the magistrate judge erred in concluding the e-mail version and the online version of the press release are the same.  R & R, p. 35, n. 15 (Doc. 531).  Impact asserts there is no evidentiary basis for this conclusion.  However, there is also no evidentiary

_____

[4]"There is no evidence that more than six people, all Impact employees, received the press release in person. To find that Stanton distributed the release to additional people would be mere speculation; therefore, the facts are undisputed."  R & R, p. 34 (Doc. 531).

basis to conclude there were more than two versions.  Impact implicitly acknowledges this by stating, "Plaintiffs disseminated at least two different versions of the false and misleading press release in person, by e-mail, and online[,]" Impact Obj., p. 5 (Doc. 542), rather than pointing to any evidence in the record establishing more than two versions of the press release.  Impact points out, however, that Plaintiffs failed to produce, despite repeated requests, a single email that attached the press release from the email account noreply@jdmellberg.com.  Impact argues an inference cannot be made as to which version was emailed because the actual emails were not disclosed by Plaintiffs.

This argument, however, fails to acknowledge that a third-party vendor was appointed to conduct a search of six email accounts.  May 24, 2018, Order (Doc. 234), July 20, 2018, Order (Doc. 271).  Further, a subsequent status report did not indicate that disclosure of the emails had not been completed.  October 9, 2019, Status Report (Doc. 301).[5]

Impact's objection also fails to acknowledge that Impact's summary judgment briefing on this issue only relied upon two versions of the press release.  Impact Resp. to Pl. MSJ, p. 4, n. 1 (Doc. 368) ("Both versions of the press release are in the record (Doc. 86-1 & Larson Decl. Ex. 1) and both are the subject of the Counterclaim. See Doc. 86, Countercl. ¶¶ 22-23.").  As the undisputed evidence in the record only includes two versions of the press release, the Court will overrule this objection.

2. *Dissemination*

Impact also objects to the magistrate judge's recommendation that the false advertising claim should be dismissed because the press release was not sufficiently disseminated.  In making this argument, Impact initially relies upon its argument that the two versions of the press release should be analyzed together.  As the Court has determined the versions of the press release are appropriately viewed separately, the Court will overrule this

---

[5]A review of the docket indicates additional filings and hearings occurred regarding discovery issues, including the issue of emails.

objection.

However, Impact further argues that, even if the versions of the press release are viewed separately, the magistrate judge erred in determining the relevant market to be "the nationwide pool of individual financial advisors and agents, which numbers in the thousands." R & R, p. 34 (Doc. 531). Rather, Impact argues for the first time that, "[g]iven Plaintiffs' targeted efforts and instructions for distribution, a reasonable jury could find the relevant purchasing public to be the Cashflow College attendees." Impact Obj, p. 6 (Doc. 542). The Court does not disagree with Impact's assertion that whether a dissemination targeted relevant consumers is considered, Impact Obj., p. 6 (Doc. 542), because the material deception must be likely to influence a purchasing decision in a Lanham Act claim. *Southland Sod*, 108 F.3d 1139. Indeed, "for purposes of the Lanham Act's definition of "commercial advertising or promotion," both the required level of circulation and the relevant "consuming" or "purchasing" public addressed by the dissemination of false information will vary according to the specifics of the industry." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1385 (5th Cir. 1996); *see also Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, No. SACV041371AHSVBKX, 2006 WL 8434390, at *6 (C.D. Cal. Oct. 19, 2006) ("The level of circulation required to constitute commercial advertising and promotion is 'an elastic factor' that 'varies from industry to industry.'"), *citation omitted*.

Additionally, as summarized by the magistrate judge:

> To qualify as commercial advertising, the representations "must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or promotion' within that industry." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734-35 (9th Cir. 1999). JDM posited that the relevant market consisted of consumers of financial products and advisors that market and sell financial products. (Doc. 333 at 16.) Impact did not dispute this summary, however, it emphasized that the direct competition between Impact and JDM was in relation to independent advisors and agents, not direct consumers. (Doc. 368 at 2, 4-5.) For purposes of this motion, the Court will construe the relevant market as the narrower category – the nationwide pool of individual financial advisors and agents, which numbers in the thousands. Internal employees of Impact are not the relevant purchasing public. Even if they were part of the target market or some minimal number of advisors received the press release, that would not qualify as dissemination.

R & R, p. 34 (Doc. 531). In this case, the evidence in the record establishes that the first version of the press release was targeted to be released to Cashflow College attendees and

1  Impact employees.  However, the evidence does not establish the press release was received

2  by anyone other than six Impact employees.  In other words, there is no evidence in the

3  record that any Cashflow College attendee received the first version of the press release.  *See*

4  *e.g. TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011) (false

5  advertising claim requires showing plaintiff has been or is likely to be injured by the false

6  advertisement).  When considering the targeted nature of the release, the Court finds it

7  appropriate to also consider this in light of the level of circulation; here, the level of

8  circulation was minimal.  The Court will overrule this objection.

9

10  3. *Materiality*

11        Impact objects to the magistrate judge's recommendation that the second version is

12  not material.  The magistrate judge reached this conclusion because the press release did not

13  influence the decision of Stephen Abraham Ashton ("Ashton") whether to work with Impact

14  and because Ashton did not state he or others would have decided to work with a company

15  other than Impact based on the portion of the press release that included actionable

16  commercial speech.  Impact argues, however, it is entitled to a presumption that the false

17  statement deceived consumers and was material because the false statements were

18  deliberately made by Plaintiffs.[6]  *See Southland Sod*, 108 F.3d at 1146.

19        As pointed out by the magistrate judge, a plaintiff must establish materiality even

20  when a court finds that a defendant's advertisement is literally false.  *Skydive Arizona, Inc.*

21  *v. Quattrocchi*, No. CV 05-2656-PHX-MHM, 2009 WL 6597892, at *27 (D. Ariz. Feb. 2,

22  2009), *aff'd*, 673 F.3d 1105 (9th Cir. 2012), *citation omitted*; *see also Cashmere & Camel*

23  *Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 312 n. 10 (1st Cir. 2002) ("even when a

24  statement is literally false or has been made with the intent to deceive, materiality must be

25  demonstrated in order to show that the misrepresentation had some influence on

26  consumers"); 44 Am. Jur. Proof of Facts 3d 1 (Originally published in 1997).  The evidence

27  ─────────────────────

28        [6]The parties dispute whether the statements were literally false.

in the record (e.g., the declaration of Ashton) does not establish materiality because the portion that is likely to influence consumers is not actionable.  The Court will overrule this objection.

Impact also argues that the statement is material because Plaintiffs "misrepresented an inherent quality or characteristic of the product."  Impact Obj., p. 9 (Doc. 542), *quoting Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002).  An inherent characteristic is one that relates to "the product at issue, as well as the market in which it is sold."  *Cashmere & Camel Hair*, 284 F.3d at 312; *see also In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915, 924 (C.D. Cal. 1994).  Here, the statements refer to conduct and not an inherent quality or characteristic of the product or its market.  The Court will overrule this objection.

As there is no evidence in the record that any Cashflow College attendee received the press release, Impact cannot show materiality as a matter of law.  *See e.g. TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011) (false advertising claim requires showing plaintiff has been or is likely to be injured by the false advertisement).  The Court agrees with the magistrate judge and will overrule this objection.

4. *Exclusion of False and Misleading Statements*

Impact objects to the failure of the magistrate judge to consider all of the false and misleading facts in the press releases.  Specifically, Impact asserts accusations and allegations should be considered, as well as statements previously determined to be non-commercial speech and not inextricably intertwined with the commercial speech.

The Court has previously considered whether summarizing the litigation in the press release was actionable.  August 19, 2016, Order (Doc. 102); *see e.g. Engineered Products Co. v. Donaldson Co., Inc.*, 165 F. Supp. 2d 836, 867 n. 21 (N.D. Iowa 2001) (holding that a press release is outside the scope of the Lanham Act because there is nothing to suggest it is anything other than a legitimate news item), and the Court does not find it appropriate to reconsider that analysis.  *See generally Northwest Acceptance Corp. v. Lynnwood*

*Equipment, Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988) (motions for reconsideration are disfavored); *Above the Belt, Inc. v. Mel Bohanan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983) (motion for reconsideration is not to be used to ask a court "to rethink what the court had already thought through – rightly or wrongly").  The Court will overrule this objection.

5. *Denial of Damages and Injunctive Relief*

Impact objects to the denial of damages and injunctive relief.  Specifically, Impact requests the Court order Plaintiffs/Counter-Defendants to remove the press release from the public sphere and publish a corrected press release.  However, because the Court has determined Impact cannot establish its counter-claims, the Court finds Impact similarly cannot establish an irreparable injury is likely.  *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (party seeking injunctive relief must show irreparable injury is likely).  The Court will overrule this objection.

6. *Ownership Interest in ForumaFolios*

Impact objects to the magistrate judge's finding that Impact had an ownership interest in FormulaFolios, an investment advisory firm.  The Court agrees with Impact that this finding is not material to the recommended holding of the R & R.  As such, this finding is an advisory opinion as to the facts in the record.  While the restriction against giving an advisory opinion refers to advising what the law would be upon hypothetical facts, *Chafin v. Chafin*, 568 U.S. 165, 172 (2013), the Court declines to adopt a finding of fact that appears to be disputed.  Specifically, Will testified that Impact was a "principal" of FormulaFolios.  Will Dep., p. 9 (Doc. 490-1).  While this may express an ownership interest, it is not clearly stated.  The Court rejects this finding and will sustain this objection.

Accordingly, after an independent review,  IT IS ORDERED:

1.      Impact's Motion for Attorneys' Fees and Expenses (Doc. 479) is DENIED.

2.      Plaintiffs' First Motion to Supplement the Record (Docs. 539) is DENIED.

3.      Plaintiffs' Second Motion to Supplement the Record (Doc. 545) is GRANTED.

4.      The Report and Recommendation (Doc. 531) is ADOPTED except as to the finding Impact has an ownership interest in FormulaFolios.

5.      Plaintiffs Objections (Doc. 541) are overruled.

6.      Impact's Objections II through VI (Doc. 542) are overruled.[7] Impact's Objection VII as to the ownership interest of FormulaFolios is sustained.

7.      Defendants' Motion for Summary Judgment on Damages as to Claims 1-5 and 7-10 (Doc. 455), Plaintiffs' Motion for Summary Judgment on Defendant Impact's Counterclaim (Doc. 333), Defendants Fine and Will's Motion for Summary Judgment as to Claim 6 (Doc. 329) are GRANTED.

8.      Defendants Fine and Will's Motion for Summary Judgment as to Claims 1, 5, 7, and 8 (Doc. 329), Defendants' Motion for Summary Judgment on Claims 2, 3, 9, and 10 (Doc. 332), Defendant Will's Motion for Summary Judgment on Claim 6 as to Damages (Doc. 453), JDM and Defendants Fine and Godinez's cross-motions for summary judgment on Claim 4 (Docs. 338, 365), Plaintiffs' Motion for Spoliation Sanctions (Doc. 382), Impact's Motion to Strike (Doc. 448), and Impact's Motion to Disqualify a Witness (Doc. 450). are DENIED AS MOOT.

9.      Summary Judgment is awarded in favor of Defendants and against Plaintiffs as to the claims in Plaintiffs' Second Amended Complaint.

10.     Summary judgment is awarded in favor of Plaintiffs and against Defendants as to the Counterclaims.

11.     The Clerk of Court shall enter judgment and shall then close its file in this matter.

DATED this 20th day of May, 2020.

_____
Cindy K. Jorgenson
United States District Judge

_____
[7]Impact's "I" is a section regarding background and is not an objection.