**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua David Mellberg, LLC, et al., ) | |
| Plaintiffs, ) | No. CIV 14-2025-TUC-CKJ |
| vs. ) | **ORDER** |
| Jovan Will, et al., ) | |
| Defendants. ) | |

Plaintiffs (collectively "JDM"), Defendants Jovan Will, Tree Fine, Fernando Godinez and Carly Uretz (collectively, "Individual Defendants") and The Impact Partnership ("Impact") have each filed Motions for Attorneys' Fees (Docs. 565, 568, 570). Responses (Docs. 580, 581, 584, 585) and Replies (Doc. 586, 587, 594) have been filed. Additionally, the JDM has filed a Motion to Strike (Doc. 583), to which Impact has filed a Response (Doc. 592) and JDM has filed a Reply (Doc. 595). Supplemental documents have also been filed. The Court declines to schedule this matter for oral argument. *See* LRCiv 7.2(f); 27A Fed.Proc., L. Ed. § 62:361 (March 2021) ("A district court generally is not required to hold a hearing or oral argument before ruling on a motion.").

*Motion to Strike* (Doc. 583)

JDM requests the Court to strike certain statements from the Declarations of William P. Eiselstein and Stephen W. Odom, Jr. that were offered in support of Impact's fee motion because the statements disclose settlement discussions between the parties. Indeed, the applicable rule states:

**(a) Prohibited Uses**. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

* * * * *

(2) conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed.R.Evid. 408(a).  However, the rule also states:

**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408(b).

While this evidence is offered for another purpose, this is not a delineated purpose of the rule.  Although the exceptions are not exhaustive, the Court considers this in determining that Arizona's public policy interests of protecting the confidentiality of settlement negotiations, *Grubaugh v. Blomo ex rel. Cty. of Maricopa*, 238 Ariz. 264, 268 (App. 2015) (recognizing Arizona has a "robust policy of confidentiality of the mediation process"); *Miller v. Kelly*, 212 Ariz. 283, 287 (App. 2006) (recognizing that "[Arizona's] strong public policy encouraging settlement of lawsuits . . . would be thwarted by disclosure of information intended to remain confidential"), outweighs any relevance of this evidence.  The Court will grant the Motion to Strike.


*Attorneys' Fees and Non-Taxable Costs*

An award of reasonable attorneys' fees to the prevailing party may be made in "exceptional cases" pursuant to the Lanham Act 15 U.S.C. § 1117(a).  The Supreme Court has stated that an "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014) (emphasis added). "[D]istrict courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' [under a preponderance of the evidence standard] to

determine if the case was exceptional." *SunEarth, Inc. v. Sun Earth Solar Power Co. Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016), *en banc*.  Nonexclusive factors to consider include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*, *internal citations and quotations omitted*.

The prevailing party "is the party who prevails as to the substantial part of the litigation." *Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 447 (9th Cir.1996); *see also Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir.1999) ("[W]hen one party gets substantial relief it 'prevails' even if it doesn't win on every claim.").  Indeed, as pointed out by Impact, an award of costs to a defendant that loses on a counterclaim but succeeds in warding off a predominant claim is appropriate.  *See  Hashimoto v. Dalton*, 118 F.3d 671, 677 (9th Cir. 1997) ("It is enough that [the party] succeeds "on any significant claim affording some of the relief sought."); *Ira Green, Inc. v. Military Sales & Service Co.*, 775 F.3d 12, 29 (1st Cir. 2014) ("Compared to the amount of time, effort, and resources devoted to the [Plaintiffs'] claims. . . the counterclaims. . . were a sideshow.").

Impact and Individual Defendants prevailed in the initial litigation.  Although JDM prevailed in the countersuit, the Court cannot say the issues of the countersuit were close and difficult.  Further, while the Court declines to conclude any party litigated in bad faith for the purposes of determining the prevailing party, *see e.g. Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978) ("It is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.  This kind of hindsight bias could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."), the Court does not find that an award would chill future litigation.

Arizona law provides that the Court may award the successful party in a contested action arising out of a contract reasonable attorneys' fees. A.R.S. § 12-341.01(A).  Indeed,

"[t]he intent of this statute is for the successful party to recover under ordinary circumstances." *Velarde v. Pace Membership Warehouse, Inc.*, 105 F.3d 1313, 1318 (9th Cir. 1997), n. 5, *quoting G & S Investments v. Belman*, 145 Ariz. 258, 268, 700 P.2d 1358, 1368 (App. 1984).  The Court has the discretion to determine the circumstances appropriate for the award of fees.  *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).  However, "there is no presumption that a successful party should be awarded attorney fees under § 12-341.01." *Motzer v. Escalante*, 265 P.3d 1094, 1095 (Ariz. Ct. App. 2011); *see also Manicom v. CitiMortgage, Inc.*, 336 P.3d 1274, 1283 (Ariz. Ct. App. 2014) (holding that an award of attorneys' fees under A.R.S. § 12-341.01(A) "is permissive" and "not mandatory").  Indeed, the Court of Appeals of Arizona has stated, "when enforcing a contract that provides for reasonable attorney fees and costs, a trial court retains broad discretion to evaluate the reasonableness of requested attorney fees and costs . . ." *Tucson Ests. Prop. Owners Ass'n v. Jenkins*, 247 Ariz. 475, 480 (App. 2019), *review denied* (Mar. 31, 2020).

An award of attorneys' fees may also be appropriate for a claim of misappropriation pursuant to A.R.S. § 44-404(1).[1]  A showing that the trade secret claim was made in bad faith or the opposing party was guilty of willful and malicious misappropriation must be made. *True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 427 F. Supp. 2d 946, 951 (D. Ariz. 2006).

The Ninth Circuit allows prevailing parties to recover non-taxable costs where a statute authorizes a fees award.  *See, e.g. Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010).   As summarized by another court:

---

[1]Individual Defendants also argue for an award of attorneys' fees pursuant to A.R.S. § 29-388(b).  The statute in effect in the filing year of 2014 provided that where a derivative action "was brought without reasonable cause" defendants may be awarded "reasonable expenses, including attorney fees, incurred by them in the defense of such action."  "'Reasonable cause' to bring an action is an objective standard that asks whether any reasonable attorney would have thought the claim was tenable." *Cal X–Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 412 (App. 2012).  However, such an award of fees is discretionary. *KCI Rest. Mgmt. LLC v. Holm Wright Hyde & Hays PLC*, 236 Ariz. 485, 490, 341 P.3d 1156, 1161 (App. 2014).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In Arizona, "a victim of a breach of contract may recover damages from the breaching party to compensate for the attorneys' fees and costs it incurred in defending a separate action initiated against it as a foreseeable result of the breach." State Bar of Arizona, *Arizona Attorneys' Fees Manual*, § 7.3.1 (6th ed. 2017); *see Desert Mountain Properties Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 236 P.3d 421, 436 (Ariz. Ct. App. 2010), *aff'd*, 250 P.3d 196 (Ariz. 2011) ("[W]hen one party's breach of contract places the other in a situation that 'makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.' ") (quoting *Fairway Builders, Inc. v. Malouf Towers Rental Co.*, 603 P.2d 513, 529 (Ariz. Ct. App. 1979)). Plaintiffs have incurred attorneys' fees and costs defending against Defendant [] in related cases . . .

In addition, Plaintiffs, as the successful party in a "contested action arising out of a contract, express or implied," are entitled to recover the attorneys' fees and taxable costs incurred in litigating this matter. A.R.S. §§ 12-341, 12-341.01. . .

*Dishon v. Gorham*, No. CV-16-04069-PHX-ROS, 2020 WL 1244415, at *2 (D. Ariz. Mar. 16, 2020).

*JDM's Motion for Attorneys' Fees* (Doc. 565)

JDM seeks attorneys' fees from Impact for JDM having to defend the baseless Lanham Act false advertising counterclaim and the unreasonable and vexatious manner in which Impact pursued the claim. JDM asserts Impact knew, when it filed the counterclaim, the claim was baseless, the press release it was suing on was never distributed beyond six of Impact's employees, it had no evidence of anyone having read the challenged statements, and had no evidence of being damaged.

In support of this argument, JDM points out that Impact did not seek preliminary injunctive relief although, if meritorious, Impact should have had sufficient evidence from the two year litigation in Georgia. JDM asserts Impact's actions were taken to drive up JDM's litigation costs, create leverage in the case, and distract the Court's attention from Impact's willful and malicious misappropriation. Impact, asserts, however, that this claim was not so exceptional as to warrant an award of attorneys' fees.

In examining the totality of the circumstances, the Court considers that Impact had a basis to believe JDM had disseminated a press release that included disparaging information. This belies JDM's claim that Impact acted with an intent to increase litigation costs, create

leverage, or distract the Court's attention.  The Court also considers that the interactions between the parties were at the heart of both JDM's claims and Impact's counterclaim.  In such circumstances, it was reasonable for Impact to act to advance considerations of compensation and deterrence in a countersuit in this case.  That Impact failed to persuade this Court of the merits of the counterclaim does not make Impact's positions unreasonable.  *See, e.g., Reserve Media, Inc. v. Efficient Frontierts, Inc.,* No. 2-15-cv-05072-DDP (AGRx), 2017 WL 2562098, at *2 (C.D. Cal. June 12, 2017) ("[T]he fact of prevailing at summary judgment alone is insufficient to entitle [a] party to fees under the Lanham Act."), *citation omitted*.  In light of this, the Court cannot say Impact acted frivolously or unreasonably in bringing the counterclaim.  *See e.g. Sarieddine v. Allen Visions E-Juice, Inc.*, No. CV 18-3658 PA (MAAx), 2019 WL 4316245, at *5 (C.D. Cal. June 14, 2019) ("[a] party's failure to successfully persuade the court on the merits of its position does not render that party's motivations suspect[ or] its claims frivolous ..."), *citation omitted*.

The Court finds JDM has failed to establish by a preponderance of the evidence that Impact pursued unreasonable claims, engaged in fraudulent conduct, or conducted this litigation in an unreasonable manner.  In its discretion and considering all of the circumstances, the Court finds this case is not exceptional and an award of attorneys' fees is not appropriate.  The Court will deny JDM's Motion for Attorneys' Fees (Doc. 565).

*Individual Defendants' Motion For Award of Attorneys' Fees And Non-Taxable Expenses* (Doc. 568)

Individual Defendants assert they are entitled to attorneys' fees based on Count 4, the Breach of Contract Claim, as to Defendants Fine and Godinez.  This claim addressed whether Fine and Godinez breached confidentiality agreements with JDM.  Individual Defendants also argue they should be awarded attorneys' fees as to Count 6, which alleged Defendant Will breached duties he owed to Mellberg as members of AAA.

For purposes of the attorney fees statute, the "meaning of 'arises out of contract' is broad[.]" *ML Servicing Co. v. Coles*, 235 Ariz. 562, 560 (App. 2014).  An action arises out

of contract when a "plaintiff asserted a contract and the defendant successfully proved that no contract existed[,]" when the claim would not exist absent the contract or when "the tort could not exist 'but for' the breach or avoidance of contract." *SK Builders, Inc. v. Smith*, 246 Ariz. 196, 204–05 (App. 2019), *superseded by statute on other grounds*, *citations omitted*. In determining whether an action arises out of contract the Court considers whether the plaintiff would have a claim even when a contract does not exist." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15–16 (App.2000). A "tort claim will 'arise out of a contract' only when the tort could not exist 'but for' the breach or avoidance of contract." *Id.*; *see also Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 542–44 (1982) ("The fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under § 12–341.01(A) as long as the cause of action in tort could not exist but for the breach of the contract.").

The Court finds Individual Defendants were the successful parties under A.R.S. § 12-341.01. In making such a determination, the Court considers the totality of the circumstances and the relative success of the litigants is considered. *Med. Protective Co. v. Pang*, 740 F.3d 1279, 1283 (9th Cir. 2013). Considering the "totality of the litigation" between JDM and Individual Defendants, it is clear Individual Defendant achieved complete success as to these claims. *See e.g. Murphy Farrell Dev., LLLP v. Sourant*, 272 P.3d 355, 365 (Ariz.App. 2012). Under A.R.S. § 12–341.01 the Court has discretion to award Individual Defendants, the successful parties, reasonable attorneys' fees. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985). Factors to consider in exercising its discretion to award reasonable fees include:

> (1) the merits of the unsuccessful party's defense, (2) whether "[t]he lawsuit could have been avoided or settled," (3) whether a fee award would be "an extreme hardship," (4) whether the successful party prevailed completely, (5) the novelty of the legal questions, and (6) whether a fee award would discourage others with legitimate claims.

*Freeport Mins. Corp. v. Corbell*, No. 2 CA-CV 2016-0226, 2017 WL 3623257, at *5 (Ariz. Ct. App. Aug. 23, 2017), *citing id.*; *see also Orfaly v. Tucson Symphony Society*, 209 Ariz.

1  260, 265-55 (App. 2004), *citing Associated Indem. Corp.*, 143 Ariz. at 570.  An award need

2  not equal or relate to the fees actually paid.  A.R.S. § 12-341.01.B.

3          Although JDM's Count 4 ultimately proved unsuccessful, the Court does not find it

4  was unmeritorious.  Rather, there were confidentiality agreements between JDM, Fine, and

5  Godinez.  It was not unreasonable for JDM to pursue that claim.  However, as to Count 6,

6  JDM's claim lacked evidentiary support or a sound legal basis; this claim was without merit.

7  Additionally, the actions of JDM and counsel resulted in unclear theories being presented and

8  delayed/denied discovery.

9          The Court disagrees with JDM's argument that Individual Defendants' action were

10  superfluous to the litigation.  Rather, although the claims against Individual Defendants were

11  intertwined with the claims against Impact, counsel for Individual Defendants had to

12  determine where they could rely upon the arguments of Impact and where specific issues as

13  to Individual Defendants needed to be addressed by Individual Defendants themselves.

14  Additionally, because JDM has been willing to expend significant sums to pursue this

15  litigation, it does not appear an award would be an extreme hardship to JDM.  However, the

16  Court does not place significant weight on this factor as there is no evidence before the Court

17  to confirm this supposition.  Additionally, Individual Defendants were successful in

18  defending against these claims.  Although JDM argues Individual Defendants only won

19  because of a procedural issue, this fails to acknowledge that the failure to establish damages

20  was an element JDM failed to adequately plead and support with evidence.   In light of the

21  facts of this case, an award of fees would not discourage others with legitimate claims.

22          Lastly, the claims against Individual Defendants were based on agreements with JDM.

23  Although JDM asserts Defendant Uretz was not sued for breach of contract and, indeed,

24  Uretz did not sign an agreement with JDM, the claims against Uretz were premised on Uretz

25  conspiring and aiding and abetting other Defendants for the alleged breach of their

26  agreements.  The Court also considers the nature of the claims and that the different claims

27  against different Defendants are interwoven.  *See Skydive Arizona, Inc. v. Hogue*, 238 Ariz.

28

357, 369 (App. 2015) (Fee award is appropriate where contract and tort claims are interwoven. "Claims are interwoven when they are based on the same set of facts and involve common allegations, which require the same factual and legal development."). The Court finds Individual Defendants are entitled to an award of attorneys' fees pursuant to A.R.S. §12-341.01.

Individual Defendants also argue an award of attorneys' fees as to Counts 4 and 6 pursuant to A.R.S. § 44-404(1) is appropriate. Further, they request an award of attorneys' fees as to Count 6 pursuant to A.R.S. § 29-833(B).[2] Because the Court has found an award of attorneys' fees pursuant to A.R.S. § 12-341.01, the Court declines to consider the arguments on the alternate theories for a basis for an award of attorneys' fees. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 523, 212 P.3d 853, 861 (Ct. App. 2009), *citation omitted*.

Factors to consider in determining whether attorneys' fees are reasonable include:

(A) The time and labor required of counsel;

(B) The novelty and difficulty of the questions presented;

(C) The skill requisite to perform the legal service properly;

(D) The preclusion of other employment by counsel because of the acceptance of the action;

(E) The customary fee charged in matters of the type involved;

(F) Whether the fee contracted between the attorney and the client is fixed or contingent;

(G) Any time limitations imposed by the client or the circumstances;

(H) The amount of money, or the value of the rights, involved, and the results obtained;

(I) The experience, reputation and ability of counsel;

(J) The "undesirability" of the case;

---

[2]A repeal of this statute was effective September 1, 2020. As the Court declines to address whether an award of attorneys' fees is appropriate pursuant to this theory, the Court need not determine the effect of the repeal in this case.

(K) The nature and length of the professional relationship between the attorney and the client;

(L) Awards in similar actions; and

(M) Any other matters deemed appropriate under the circumstances.

LRCiv 54.2(c). This case involved protracted discovery and extensive motion practice. This required a significant expenditure of time by counsel. The claims addressed in this case were not novel, but JDM's attempts to modify the claims and the continued denial and delay of discovery reasonably required defense counsel to expend significant efforts to defend against the claims. Because of the contentious nature of this litigation, the Court finds the skill required to properly defend the case was substantial. The lengthy nature of the litigation necessarily precluded possible other employment by counsel. Additionally, although the amount of damages sought by JDM repeatedly changed, the sums were significant.

While a "successful party in a contract action is entitled to recover fees for 'every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest[,]'" *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 188, 673 P.2d 927, 932 (App.1983) (quoting *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir.1982)), the Court considers that the level of success is also relevant in determining whether attorneys' fees are reasonable under the circumstances of a case. *SWC Baseline & Crismon Inv'rs, L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 287, 265 P.3d 1070, 1086 (Ct. App. 2011). Individual Defendants were completely successful in defending the claims against them.

The Court has reviewed the itemized objections to Individual Defendants' requested fees. The Court agrees with Individual Defendants that a "block bill" need not necessarily be denied. *Advanced Reimbursement Sols. V. Spring Excellence Surgical Hosp., LLC*, No. CV-17-01688-PHX-DWL, 2020 WL 2768699, at *6 (D. Ariz. May 28, 2020) ("Courts tend to award fees despite the presence of block-billing where the billing is for 'closely related tasks, each covering no more than a few hours.'"). However, the Court finds the following entries constitute block billing and, as such, the Court, in its discretion, finds these fees are

unreasonable:

| 4/25/2014 | MC2 | Correspondence with Billy Eiselstein regarding timing of defamation lawsuit; directions to assistants regarding motion practice and additional engagement and joint defense agreements | 1.80 | $365.00 | $657.00 |
|---|---|---|---|---|---|
| 9/25/2017 | MSW | Review drafts of Joint Status Report provided by Mellberg's counsel; communications with B. Eiselstein re: same; work on defendants' portions of Joint Report; review additional insertions proposed by B. Eiselstein, and incorporate same into draft of Joint Report; telephone conferences with B. Eiselstein and Mellberg's counsel re: same; forward revisions to Mellberg's counsel; telephone conference with Court staff and other counsel re: additional time needed to complete Joint Report; telephone conference with all counsel re: Plaintiffs' response to defendants' portions of Joint Report; review updated draft from Mellberg's counsel, and send final comments prior to filing Joint Report with the Court. | 5.00 | $350.00 | $1750.00 |
| 9/29/2017 | MSW | Review Plaintiffs' supplemental Brief re: spoliation/J.Will's JFI laptop, costsharing, etc.; communications with B. Eiselstein re: same; review Plaintiffs' proposed search terms; prepare for Telephonic Status Conference; attend Telephonic Status Conference; telephone conference with B. Eiselstein re: same, additional discovery, scope of search terms, etc.; retrieve message and return call to J. Will re: producing emails and other documents. | 4.20 | $350.00 | $1470.00 |

- 11 -

| 10/11/2017 | MSW | Communications with Mellberg's counsel re: Joint Report, files to be searched, estimated data size, forensic examination protocol, etc.; follow-up on production of load files for Will/Fine personal emails; telephone conference with B. Eiselstein re: search parameters and protocol, estimated expense for third-party vendors, etc.; review proposed lists of search terms from Plaintiffs and Impact; communications with J. Corso (D4) re: estimated volume of data to be searched after extraction, culling, etc. of imaged drives, and cost for preliminary extraction of selected file types; email to all counsel re: same; communications with counsel re: keywords for searching imaged drives, additional services by ESI vendors, and costs for standard and additional services. | 3.40 | $350.00 | $1190.00 |
| 10/13/2017 | MSW | Read email from B. Eiselstein re: proposals for keyword searching; review filed version of Joint Status Report; communications with D4 re: scope of forensic examination proposed by Plaintiffs; draft Supplement to Joint Status Report; communications with B. Eiselstein re: scope of forensic examination, final list of keyword search terms, etc.; communications with Plaintiffs' counsel re: proposed instructions and information to potential ESI vendors; review initial draft of scope of work/ instructions to vendors; revisions to scope of work/instructions to vendors, and forward same to Plaintiffs' counsel; further communications with counsel re: same; communications with D4 re: Intake Report for J. Will's laptop, and collection methods used for forensic image; finalize Scope of Work and related terms re: disclosure, inquiries from vendors, etc.; forward Scope of Work with additional instructions to D4. | 3.00 | $350.00 | $1050.00 |

| 11/8/2017 | MSW | Work on Submission of Additional Information re: apportioning costs of ESI discovery and forensics; communications with IT Department re: same; email to B. Eiselstein re: third-party hosting, load files, etc.; review and revise Plaintiffs' draft of proposed Order re: appointment of D4; review B. Eiselstein's comments on Submission of Additional Information, and revisions to same; forward revisions to proposed Order to Plaintiffs' counsel; communications with Plaintiffs' counsel re: final draft of proposed Order, and copies of Exhibits to proposed Order. | 2.30 | $350.00 | $805.00 |
|---|---|---|---|---|---|
| 2/12/2018 | MSW | Read various emails re: ESI discovery, keyword searches of "jdmellberg" email accounts, documents produced by Advisors Excel, etc.; review prior emails in preparation, and participate in telephone conference with A. Burgett, L. Archibald and L. Jones re: instructions to D4 re: production protocol, natives v. images with metadata, metadata fields, etc.; read email re: JDM's claim of privilege for communications with J. Rowe; preliminary review of documents produced by Advisors Excel; telephone conference with B. Eiselstein re: document production and protocol, depositions of Mellberg witnesses, additional discovery needs, etc.; review D4's list of proposed metadata fields for ESI production files; communications with A. Burgett and L. Jones re: same. | 1.80 | $350.00 | $630.00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/19/2018 | MSW | Continue review of prior document productions, Liquidfiles links and receipts, forensic exam notes, etc.; communications with Mellberg's counsel re: same, additional productions with metadata and images for delivery via Liquidfiles; communications with Mellberg's counsel re: follow-up questions to D4 re: forensic examination reports and additional examination of particular devices, stipulation to designate results of forensic exams as "Attorneys' Eyes Only" and updates to Aug. 2017 production files; participate in lengthy Status Conference with Court and all counsel. | 4.00 | $350.00 | $1400.00 |
| 4/26/2018 | MSW | Conference with L. Jones and K. Fitzpatrick re: technical issues with previous document productions; communications with Mellberg's counsel re: conference call to address technical issues; review proposed additional search terms for D4; review list of documents from D4 production that Mellberg's counsel requests be reduced from "Attorney's Eyes Only" designation to "Confidential" for review by parties. | 2.00 | $350.00 | $700.00 |
| 6/6/2018 | MSW | Read emails re: searching of Josh Mellberg's email accounts; prepare for Telephonic Status Conference; telephone conference with other counsel re: depositions of Impact and individual defendants; communications with clients re: same; participate in Telephonic Status Conference re: pending E-Discovery issues, depositions, production of Arceo's computer image, etc. | 4.00 | $350.00 | $1400.00 |

| 6/11/2018 | MSW | Conference with L. M. Jones re: Court-Ordered logs from D4 production #2; review email from Ricoh re: initial results from search of Josh Mellberg's email accounts; review D4 second search results and work on preparing logs of documents not produced (non-responsive and "tech issue"); communications with D4 re: exporting logs as required by recent Court Order; communications with Mellberg's counsel re: logs from D4's second set of keyword searches; review exhibit to deposition of L. Chiagouris (Mellberg's digital marketing expert) re: "inaccuracies" in Spyfu data; communications with Impact's counsel re: depositions of individual defendants and Impact officers; review documents produced by M. Pulido in response to subpoena re: computer forensics licenses and training; continue research for motions for summary judgment as to "trade secrets" and related claims; review Impact's Supplement to Motion to Compel Testimony and Documents re: Jeff Rowe. | 2.80 | $350.00 | $980.00 |
| 8/7/2018 | MSW | Communications with Impact's counsel and S. Carroll re: response to Motion for Spoliation sanctions in GA Case; research re: response to objections to Magistrate's Order on non-dispositive matters; telephone conference with Impact's counsel re: contact by former Mellberg employee seeking legal assistance for wrongful termination claim; telephone calls to District Court law clerks re: procedure for responding to objections to Magistrate Judge's Order; read email from Impact's counsel re: Joint Motion related to Mellberg's communications with T. Fine and C. Uretz; preliminary review of draft of Motion. | 1.40 | $350.00 | $490.00 |

| 10/29/2018 | MSW | Communications with Impact's counsel re: coordination of efforts for upcoming Joint Motions for Summary Judgment; communications with Plaintiffs' counsel re: deficiencies in supplemental production of emails and updated privilege log; communications with Impact's counsel re: deposition of Dr. Moine (in Los Angeles); work on outlines/summaries for upcoming motions for summary judgment. | 1.50 | $350.00 | $525.00 |
|---|---|---|---|---|---|
| 1/9/2018 | MSW | Review Orders re: filing exhibits under seal in support of Defendant's MSJ, and Mellberg's MSJ re: counterclaim; attempt to retrieve sealed exhibits from Court online; communications with Impact's counsel re: same; review Impact's Notice of errata re: request for oral argument; review Order setting oral argument on Motion to Exclude Untimely Damage Opinions; review statute and local rules on duties of Magistrate Judge; communications with Impact's counsel re: Judge Jorgenson hearing Motion to Exclude. | 1.40 | $360.00 | $504.00 |

The parties also disagree to what extent defense counsel's actions regarding the Georgia case should be reimbursed in this case. The Court agrees with Individual Defendants that some cross-knowledge between the cases is appropriate. This also applies to the litigation initiated by B. Matthew. However, the Court finds the following entries to be excessive:

| 3/9/2017 | MSW | Review Impact's Motion to Compel in Georgia lawsuit, including attached emails between counsel and "responses" by Mellberg. | .40 | $350.00 | $140.00 |
|---|---|---|---|---|---|
| 7/25/2017 | MSW | Review 30(b)(6) Notice to Mellberg in Georgia case (0.2). (modified) | .2 | $350.00 | $70.00 |

| 11/2/2017 | MSW | Meeting with T. Loehrs (M. Pulido's former employer) re: forensic images, company licenses, etc.; conference with B. Eiselstein re: same, depositions of additional fact witnesses, additional discovery, etc.; communications with C. Uretz re: potential deposition in Georgia defamation case; review Order re: joint submission of proposed Order appointing D4 to provide e-discovery services, and additional submissions re: apportionment of costs between parties; email to B. Eiselstein re: same. | .80 | $350.00 | $280.00 |
| 2/9/2018 | LMJ | Review of emails from Atlanta firm regarding production. | .40 | $205.00 | $82.00 |

Additionally, the Court finds the following entries are not reasonable:

| 5/15/2014 | MC2 | Correspondence with Carly regarding FBI agents and follow-up call to Agent Callimanis (0.6) (modified) | .60 | $365.00 | $219.00 |
| 10/13/2014 | MC2 | Conference with Carly Uretz's Dad. | .30 | $365.00 | 109.50 |
| 10/19/2016 | RBH | Review email from M. S. Woodlock and review proposed stipulated protective order (.6); review for comments (.7); preparation of email to M. S. Woodlock (.4). | 1.70 | $405.00 | $688.50 |
| 5/11/2018 | LMJ | Prepare document re-production. | 7.60 | $205.00 | $1558 |

Individual Defendants also seek an award for computerized legal research. The Court finds these fees are reasonable and should be reimbursed. *See Ahwatukee Custom Estates Management Ass'n v. Bach*, 193 Ariz. 401 10 (1999). Additionally, the Court finds out-of-pocket expenses are also appropriately ordered. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir. 1986). The affidavit of counsel Michael S. Woodlock adequately documents and supports the request for fees and expenses.

The Court finds Individual Defendants are entitled to an award of attorneys' fees and non-taxable costs. Individual Defendants seek an award of $619,889.40 for attorneys' fees,

which includes attorneys' fees for preparation of the request for attorneys' fees and costs, and an award of $25,012.00 for costs.   However, the Court finds the requested amount of $619,889.40 to not be reasonable.  The Court finds it appropriate to reduce this amount by $16,698.00 as delineated herein for an amount of $603,191.40.  Additionally, an award of attorneys' fees need not equal or relate to the fees actually paid. A.R.S. § 12-341.01.B.  The Court considers the Local Rule factors, along with the facts that counsel did not work well together, which contributed to the protracted litigation, there was a factual and legal basis for JDM to pursue the claims despite the fact they ultimately did not survive summary judgment, and that this litigation necessarily overlapped somewhat with the Georgia litigation.  These factors provide a "reasonable basis" to reduce the attorneys' fees amount.  *See generally Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571 (1985); *see also Worden v. Klee Bethel, M.D., P.C.*, No. 1 CA-CV 08-0490, 2009 WL 2003321, at *5 (Ariz. App. July 9, 2009) (reduced fee award affirmed).

In light of this, the Court will reduce the amount of attorneys' fees by 30% for a reasonable attorneys' fees award of $422,233.98.  Additionally, the Court will award Individual Defendants an award for costs in the amount of $29,874.49.  The Court finds a total award for attorneys' fees and costs in the amount of $452,108.47 to be appropriate and will grant in part Individual Defendants' Motion For Award of Attorneys' Fees And Non-Taxable Expenses (Doc. 568) to award Individual Defendants this amount.

*Impact's Motion for Attorneys' Fees and Related Non-Taxable Expenses* (Doc. 570)

Impact requests this Court award it attorneys' fees because JDM's claim were made in bad faith, A.R.S. § 44-404, and because the claims arose out of contract or were so intertwined with the contract claims, A.R.S. § 12-341.01.

The parties disagree whether the claims arise out of contract.  JDM argues that only one claim (which was not alleged against Impact) was for breach of contract and that "attorneys' fees are not appropriate based on the mere existence of a contract somewhere in

the transaction." *See Morris v. Achen Const. Co., Inc.*, 155 Ariz. 512, 514 (1987).  The

Arizona Supreme Court stated:

> Where, however, the duty breached is not imposed by law, but is a duty created by the contractual relationship, and would not exist "but for" the contract, then breach of either express covenants or those necessarily implied from them sounds in contract. *Sparks, supra; Lewin, [v. Miller Wagner & Co.*, 151 Ariz. 29, 725 P.2d 736 (App.1986) ], *supra*. The essence of such actions arises "out of a contract," eligible for an award of fees under the statute.

*Id*.  Additionally, citing *Morris* and *Buxton Arlington Pet, LLC v. Butler*, No. 1 CA-CV

16-0260, 2017 WL 4897456 (Ariz. App. Oct. 31, 2017), JDM asserts that a tort claim does

not arise out of contract where "the parties to the litigation are not the parties to the contract,

and there is no contention, as between them, that any contract is invalid." *Buxton Arlington

Pet*, at *2.  However, that bright line rule applies to "awards of attorney fees in fraud in the

inducement cases." *Id*.  Indeed, the same year in which the *Buxton Arlington Pet* case was

issued, the Arizona Supreme Court stated in another case that "[s]ection 12–341.01(A) does

not have a privity requirement for claims 'arising out of' a contract." *Sirrah Enterprises,

LLC v. Wunderlich*, 242 Ariz. 542, 547, 399 P.3d 89, 94 (2017).

In this case, agreements central to claims against Individual Defendants was at issue.

Further, the allegations of conspiracy and aiding and abetting against all Defendants are

based on those agreements.  Moreover, the misappropriation claims against Impact were

based on a contractual relationship between Impact and a competing venture, JFI, LLC

("Annuity Angel").  The Second Amended Complaint alleged that the agreement between

Impact and Annuity Angel and the actions taken pursuant to that agreement (i.e., Cashflow

College sales presentation) were virtually identical to JDM's training program.  In support

of their claims, JDM attached the Cashflow College Subscriber Agreement to the SAC.

Arizona courts have recognized that, "when the contract in question is central to the issues

of the case, it will suffice as a basis for a fee award." *Hiatt v. Shah*, 238 Ariz. 579, 584 (App.

2015), *quoting In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 836–37 (9th Cir.2001); *see

also Ajman Stud v. Cains*, No. CV-15-01045-PHX-DJH, 2020 WL 5034219, at *2 (D. Ariz.

July 21, 2020) .  Moreover, Arizona courts have "broadly interpreted which types of actions

1   arise from a contract." *Hiatt*, 238 Ariz. at 584, *citing Marcus v. Fox*, 150 Ariz. 333, 335

2   (1986).  The Court finds the action arose out of contract.

3       Even if the Court did not find the action arose out of contract, an award of attorneys'

4   fees pursuant to A.R.S. § 12-341.01 would be appropriate because the nature of the claims

5   and the different claims against different Defendants are interwoven.  *See Skydive Arizona,*

6   *Inc. v. Hogue*, 238 Ariz. 357, 369 (App. 2015) (Fee award is appropriate where contract and

7   tort claims are interwoven.  "Claims are interwoven when they are based on the same set of

8   facts and involve common allegations, which require the same factual and legal

9   development.").  The Court of Appeals of Arizona stated in a similar case:

10      It is undisputed that the central claims in this litigation were the trade secrets claim
        and the breach of employment contract claims.  The record demonstrates these claims
11      were based on the same set of facts, involving the common allegation that Jigsaw had
        misappropriated and made use of Modular's trade secrets.  Accordingly, as Jigsaw
12      asserts, these claims "required the same factual development and research work," and
        "all depositions and all other work related to discovery and disclosure w[ere]
13      necessary in connection with both claims."

14      The legal issues concerning these claims were also intertwined and overlapping.
        First, the trade secrets claim was premised on the asserted misappropriation of
15      Modular's trade secrets, which was allegedly committed primarily by the individual
        defendants' breaching the confidentiality provisions of their employment agreements
16      and using Modular's "inside information."   Similarly, whether the commands
        Modular claimed as trade secrets were in fact "trade secrets" for purposes of the
17      Uniform Trade Secrets Act was likewise substantially dependent on the
        confidentiality provisions of the employment agreements.  Finally, Modular's unfair
18      competition and tortious interference claims were based on the same set of facts as its
        trade secrets claim. As Jigsaw explains, those claims "were completely dependent
19      upon Modular's ability to prevail on its misappropriation claims" and "required no
        separate legal services."

20  *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 522–23 (App. 2009),

21  *footnotes omitted*.  Similarly, in this case, the central claims addressed allegations regarding

22  trade secrets and breaching confidentiality agreements.  These claims were based on the same

23  set of facts, which required the same factual development and research work.  Further,

24  discovery as to the claims and damages related to both these central claims.  Additionally,

25  the legal issues concerning these claims were intertwined and overlapping.

26      Ultimately, JDM's claims were not meritorious.  This conclusion is supported by

27  JDM's presentation of unclear legal theories and the delay and denial of complete discovery

28

throughout the case.  In light of this, this lawsuit could have been avoided or settled. Additionally, this case did not present novel legal issues and a fee award would not discourage others with legitimate claims.  The Court also considers that the nature of the claims and the different claims against different Defendants are interwoven.  *See Skydive Arizona, Inc.*, 238 Ariz. at 369 (Fee award is appropriate where contract and tort claims are interwoven.).  The Court finds Impact is entitled to an award of attorneys' fees pursuant to A.R.S. §12-341.01.

Because the Court has found an award of attorneys' fees pursuant to A.R.S. § 12-341.01, the Court declines to consider the argument on the alternate theories for a basis for an award of attorneys' fees.  *Modular Mining Sys., Inc.*, 221 Ariz. 515 at 523.

In determining whether attorneys' fees are reasonable, the Court considers that this case involved protracted discovery and extensive motion practice, which required a significant expenditure of time by counsel.  The claims addressed in this case were not novel, but JDM's attempts to modify the claims and the continued denial and delay of discovery reasonably required defense counsel to expend significant efforts to defend against the claims.  The skill required to properly defend the case was substantial because of the contentious nature of the litigation.  Further, the protracted nature of the litigation necessarily precluded possible other employment by counsel.  Additionally, although the amount of damages sought by JDM repeatedly changed, the sums were significant.  *See* LRCiv 54.2(c).

The Court also considers that the level of success is also relevant in determining whether attorneys' fees are reasonable under the circumstances of a case.  *SWC Baseline & Crismon Inv'rs, L.L.C.*, 228 Ariz. at 287.  Although Impact was successful in defending against JDM's claims, it was not successful in the prosecution of its counterclaim.

Weighing all factors, the Court finds Impact is entitled to an award of attorneys' fees pursuant to A.R.S. §12-341.01.  However, the Court does consider that there necessarily would have been some overlap between the litigation in this case and Georgia litigation, which affects the hours reasonably expended in representing Impact.  LRCiv 54.2(c)(3)(A);

1    *Jenkins*, 247 Ariz. at 480.

2        JDM has not provided itemized objections to Impact's requested fees.[3]  JDM generally

3    object to entries, however, based on block billing, actions taken in furtherance of the

4    counterclaim, multiple interoffice conferences, and actions taken on behalf of Individual

5    Defendants.   The Court finds the multiple interoffice conferences to be reasonable.

6    Additionally, in light of the joint defense, the Court finds cross-actions between defense

7    attorneys are reasonable.

8        As to the block billing, a block bill need not necessarily be denied. *Advanced*

9    *Reimbursement Sols.*, 2020 WL 2768699 at *6.  The Court has reviewed the entries,

10   considering whether the tasks are related and the total amount of time to complete the

11   delineated tasks.  The Court finds the following entries constitute block billing and, as such,

12   the Court finds these fees are not reasonable:

| 3/31/2014 | WE | 1.8 | $425.00 | $765.00 | Telephone call with AZ counsel regarding strategy, possible AZ counsel for individual defendants; discussions with M. Kohler regarding same and regarding plans for removal and possible claims; reviewing outline of possible arguments on motion to dismiss from M. Visan; telephone call and follow-up email with Attorney Collins regarding representation of individual defendants; reviewing motion for injunction and emails to AZ counsel regarding same. |
|---|---|---|---|---|---|

24        [3]Impact's Reply refers to specific objections made by JDM.  However, comparing JDM's

25   Opposition to Individual Defendants' Motion for Award of Attorneys' Fees And Non-taxable

26   Expenses (Doc. 581) to Opposition to Defendant the Impact Partnership's Motion for Attorneys'

     Fees and Related Non-taxable Expenses (Doc. 580), the Court notes the Individual Defendants

27   Objection includes a declaration that refers to an exhibit that specifically objects to entries.  The

     declaration attached to the Impact Objection does not include such a reference.  A review of

28   other entries on the docket sheet fails to include specific objections.

| 4/16/2014 | GK | 2.6 | $485.00 | $1261.00 | Analyze state court purported First Amended Complaint and compare to original complaint; review research regarding standards for injunctive relief in federal court; telephone conference with B. Eislestein and M. Collins regarding status and strategy; telephone call to Plaintiffs' counsel D. Bray and T. Thomason; review materials regarding Judge C. Pyle in connection with issue of consent to Magistrate; read Plaintiffs' Demand for Jury Trial. |
|---|---|---|---|---|---|
| 5/7/2014 | WE | 1.9 | $425.00 | $807.00 | Interview with C. Uretz regarding background and response to allegations in complaint; telephone call with M. Collins regarding AZ case issues; reviewing revisions to joint defense agreement; report to M. Kohler regarding Uretz interview, case status; telephone call with S. Odom regarding case status; consideration of possible counterclaim[4] |
| 4/29/2015 | TK | 5.6 | $240.00 | $1344.00 | Conferences with B. Eiselstein for purposes of identifying issues related to Second Amended Complaint and developing arguments for use in support of motion to dismiss on behalf of Defendant Impact; research regarding whether knowledge of employees may be imputed to corporation for possible use in support of motion to dismiss; conference with M. Kohler regarding deficiencies in Second Amended Complaint and arguments that could be used in support of motion to dismiss on behalf of Impact; review and analyze allegations in Second Amended Complaint for use in support of motion to dismiss on behalf of Impact; research in support of Impact motion to dismiss. |

---

[4]This entry also combines actions related to the defense against JDM's claims with the actions related to the prosecution of the counterclaim.

- 23 -

| 8/10/2015 | TK | 4.5 | $240.00 | $1080.00 | Telephone conference with B. Eiselstein revisions to draft of Joint Report; follow-up email to B. Eiselstein; multiple emails and conferences with M. Woodlock and G. Krauja concerning status of Joint Report; review and analyze Plaintiff's final draft of joint report; conference with E. Rumfelt to assist with drafting section of Joint Report addressing ESI; Telephone call to opposing counsel, M. Patel, for purposes of addressing issues related to Joint Report; supplement, edit, revise, and finalize Joint Report in preparation for filing; draft email to opposing counsel and individual defendants attaching Impact's proposed changes and additions to Plaintiffs' draft of Joint Report |
|---|---|---|---|---|---|
| 7/20/2016 | GK | 2.9 | $485.00 | $1406.50 | Telephone conference with Mr. Eiselstein regarding status and strategy for Scheduling Conference; review Joint Scheduling Memorandum and briefing on pending motion to prepare to address possible questions from Judge Kimmins; attend scheduling conference in court before Judge Kimmins. |
| 3/8/2017 | JC | 2.8 | $225.00 | $630.00 | Analysis of case law on secrecy of trade secrets in order to draft questions for corporate depositions; preparation of motion for filing; analysis of deposition questions; analysis of various lawsuits Mellberg is also involved in; review of discovery responses. |
| 3/29/2017 | JC | 4.9 | $225.00 | $102.50 | Drafted communication with expert concerning information for rebuttal report; analysis of retention contract, analysis of further documents needed for expert; analysis of documents produced by clients and need for production of certain documents. |
| 5/3/2017 | JC | 2.3 | $225.00 | $517.50 | Communication with Impact personnel concerning certain files and email address issues; analysis of certain witnesses with information and contact information; analysis of Mellberg lawsuits and various other issues. |

| 2/8/2018 | WE | 2.9 | $480.00 | $1392.00 | Telephone call with L. Archibald regarding search terms to propose for search of JDM emails; discussion regarding additional discovery issues; meet with M. Kohler and R. Kurtz to prepare for depositions; emails regarding forensic reports of individual defendants' devices; telephone call with M. Woodlock; review of AE documents. |
|---|---|---|---|---|---|
| 4/12/2018 | WE | 2.7 | $480.00 | $1296.00 | Telephone call with M. Kohler regarding follow-up from Rowe deposition, case strategy; telephone call with M. Woodlock regarding discovery and ESI issues; multiple emails regarding same; review search terms requested of JDM and JDM information on search terms allegedly used; reviewing D. Morgan deposition regarding efforts to search for documents; draft email to opposing counsel regarding JDM documents and search terms. |
| 4/30/2018 | WE | 2.4 | $480.00 | $1152.00 | Review discovery requests and email opposing counsel regarding need to produce documents regarding "whistleblower" packet; telephone call with M. Kohler regarding same; review court filing on discussions between JDM and individual defendants regarding metadata; prepare case status update and reviewing court orders regarding deadlines; telephone call with M. Woodlock regarding communications with opposing counsel; email L. Archibald regarding motion to compel JDM email search; emails regarding attempts to serve S. Hilger with deposition subpoena. |
| 5/8/2018 | WE | 9.6 | $480.00 | $4608.00 | Prepare for and take deposition of J. Tye, plaintiff's expert; discussion with M. Woodlock in preparation for 5/9 status conference; prepare for deposition of P. Russo; planning for Chiagouris deposition. |
| 5/9/2018 | WE | 6.8 | $480.00 | $3264.00 | Preparing for and taking deposition of P. Russo; discussions with M. Woodlock in preparation for status conference; participate and status conference. |

| 5/31/2018 | WE | 7.2 | $480.00 | $3456.00 | Email with A. Pringle regarding JDM email search; reviewing court order and search terms in connection with same; email with litigation support and L. Archibald; preparing for deposition of L. Chiagouris; reviewing expert reports and deposition transcripts in connection with same; discuss strategy and upcoming events with M. Kohler; travel Atlanta/New York for Chiagouris deposition. |
|---|---|---|---|---|---|
| 6/13/2018 | WE | 5.2 | $480.00 | $2496.00 | Planning for Impact depositions with M. Kohler, review and consider topics on 30(b)(6) notice; telephone calls with S. Craig and E. Williams regarding same; followup email to E. Williams; reviewing Mellberg supplemental disclosure regarding damages; discussion with M. Woodlock and M. Kohler regarding same; reviewing court order on Rowe communications; telephone calls with M. Woodlock regarding discovery issues; emails regarding deposition scheduling; emails regarding Ricoh search of Mellberg emails; review hit-list and consider limitations. |
| 7/2/2018 | WE | 2.7 | $480.00 | $1296.00 | Check on deadlines for JDM email review; reviewing JDM motion to reconsider ruling on individual defendants' documents; review local rules on motions to reconsider and email with M. Woodlock; review notice of subpoena to F. Stokes; discuss status with M. Kohler, discuss possible forensic review of J. Marshall computer; review information regarding F. Stokes; emails with co-counsel regarding depositions; research possible use of special master for JDM discovery issues; multiple emails with opposing counsel regarding sample set review, non-compliance with court deadlines; discuss sample review issues with R. Musumeci. |

| 7/13/2018 | LA | 3.6 | $260.00 | $936.00 | Prepare for and attend conference call with RICOH and opposing counsel regarding preparation of sample sets for review by opposing counsel; confer with B. Eiselstein regarding results of same; draft summary of results of same and next steps; confer with co-counsel, RICOH, and opposing counsel regarding same; review Court order related to discovery disputes and status conference; confer with R. Musumeci regarding document review status, preparation of additional document batches, and status of additional production sets. |
| 7/13/2018 | LA | 2.6 | $260.00 | $676.00 | Confer with B. Eiselstein and R. Musumeci regarding document review status and completion time frame; confer with reviewers regarding same; confer with B. Eiselstein regarding opposing counsel's response to status report; begin review of potentially privileged documents. |
| 7/17/2018 | RM | 2.4 | $215.00 | $516.00 | Assist with deposition prep review; review supplemental Will production, modify load file to ensure update of database records; review all other instances of produced, non-redacted tax returns to delete records and images to accomplish the intent of the supplemental production. |
| 7/17/2018 | LA | 3.5 | $260.00 | $918.00 | Assist with deposition prep review; review supplemental Will production, modify load file to ensure update of database records; review all other instances of produced, non-redacted tax returns to delete records and images to accomplish the intent of the supplemental production. |
| 7/19/2018 | WE | 2.7 | $480.00 | $1296.00 | Planning for depositions; reviewing T. Fine documents in preparation for deposition; reviewing prior Fine testimony; telephone call with M. Woodlock regarding deposition preparation and discovery issues; email with D. Bray regarding 30b6 scheduling; confer with M. Kohler regarding same; draft potential response to D. Bray; communications regarding JDM settlement overture to C. Uretz. |

| | | | | | |
|---|---|---|---|---|---|
| 7/30/2018 | WE | 6.3 | $480.00 | $3024.00 | Reviewing court-ordered deadlines; submit status report to court; emails with opposing counsel regarding information required under court order; reviewing documents produced in response to Mellberg email search; discussion of damages issues with R. Kurtz and M. Kohler; multiple communications regarding Wenk deposition; telephone call with M. Woodlock; communications with L. Archibald regarding preparation for depositions, document review, email searches. |
| 8/1/2018 | WE | 5.2 | $480.00 | $2496.00 | Preparing for J. Simonds deposition; reviewing document regarding Simonds; communications with L. Archibald regarding email searches, planning for depositions and possible motion for Mellberg rule violations; reviewing J. Will documents and select documents for deposition preparation; emails regarding same; participate in deposition preparation of F. Godinez and J. Will. |
| 8/9/2018 | LA | 6.1 | $260.00 | $1586.00 | Draft summary of status and arguments in preparation for telephonic hearing; review and revise correspondence to opposing party regarding errors in production sets; confer with B. Eiselstein regarding same; attend telephonic hearing; confer with opposing counsel regarding revised sample search export instructions; draft Uretz declaration in support of motion related to Russo communications with represented parties. |

| | | | | | |
|---|---|---|---|---|---|
| 9/24/2018 | GK | 2.5 | $520.00 | $1300.00 | Read individual defendants' summary of anticipated motions for summary judgment; update review of Ninth Circuit law supporting dismissal of the Computer Fraud and Abuse Act claim as a matter of law, and send correspondence to Mr. Woodlock; review The Impact Partnership's Lanham Act counterclaim as basis for federal court jurisdiction if Computer Fraud and Abuse Act claim is dismissed; read Order regarding motion for protective order and additional deposition of Mr. Russo; read correspondence regarding Defendants' respective statements of areas they intend to address in motions for summary judgment.[5] |
| 11/16/2018 | WE | 8.8 | $480.00 | $4800.00 | Prepare for Moine deposition; telephone call with opposing counsel regarding possible mediation, schedule; travel Atlanta/Los Angeles for Moine deposition; reviewing Evans deposition for facts to use in summary judgment motions. |
| 5/9/2019 | WE | 2.2 | $525.00 | $1155.00 | Review and edit motion regarding M. Bush expert witness; discuss changes with R. Kurtz; email with R. Parekh regarding motion for summary judgment on damages; email and telephone call with M. Woodlock regarding same; email to H. McIntyre regarding settlement conference with magistrate judge; discuss same with M. Kohler. |

The Court finds the following entry does not clearly indicate the actions were taken in defense of JDM's claims against Impact, as opposed to in furtherance of the counterclaim, and therefore, cannot be said to be reasonable:

| | | | | | |
|---|---|---|---|---|---|
| 3/26/2014 | WE | .8 | $425.00 | $340.00 | Email with T. Thompson regarding draft complaint against JD Mellberg; review and comment on AZ counsel proposed engagement letter; emails with M. Kohler and T. Thompson regarding next steps. |

---

[5]This entry includes actions related to both the defense against JDM's claims and the prosecution of the counterclaim.

- 29 -

Additionally, the Court finds there necessarily would have been additional overlap in the actions between the claims Impact was defending against and prosecuting the claim against JDM (e.g., document requests, deposition questions).  Lastly, the Court recognizes that some entries have been reduced.  *See e.g.*, Itemization: Fennemore Craig, P.C. (Doc. 570-2), Entries 344, 353.

Impact also seeks an award of non-taxable costs in the amount of $102,857.99.  JDM argues, however, that because both parties prevailed on their Summary Judgment motions, neither party should be considered the prevailing party.   While it is within the discretion of a district court to require each party to bear its own costs in a mixed judgment case, *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996), as amended (Jan. 15, 1997), JDM's claims were the significant focus of this case and JDM failed to succeed on any of their claims. Under a totality of litigation review, Impact achieved far greater success than JDM.  *Carl Karcher Enterprises, Inc. v. Stine Enterprises*, Inc., No. 1 CA-CV 09-0078, 2010 WL 3571535, at *2 (Ariz.App. Sept. 14, 2010); *compare Gen. Cable Corp. v. Citizens Utilities Co.*, 27 Ariz.App. 381, 385 (1976).  The Court finds, in its discretion, an award of non-taxable costs is appropriate.

The Court finds Impact is entitled to an award of attorneys' fees and non-taxable costs.  Impact seeks an award of $1,891,003.40 ($1,754,635.40 for Miller Martin, PLLC, and $136.368.00 for Fennemore Craig, P.C.) for attorneys' fees and an award of $102,857.99 for costs.  However, the Court finds the requested amount of $1,891,003.40 to not be reasonable. The Court finds it appropriate to reduce this amount by $45,916.50 as delineated herein for an amount of $1,845,086.90.  Additionally, an award of attorneys' fees need not equal or relate to the fees actually paid.  A.R.S. § 12-341.01.B.  The Court considers the Local Rule factors, along with the facts that counsel did not work well together, which contributed to the protracted litigation, there was a factual and legal basis for JDM to pursue the claims despite the fact they ultimately did not survive summary judgment, and that this litigation necessarily overlapped somewhat with the Georgia litigation.  Although Impact excluded and reduced

1    entries, *see* Motion, (Doc. 570, p. 17), the Court finds the factors provide a "reasonable

2    basis" to reduce the attorneys' fees amount.  *See generally Associated Indem. Corp. v.*

3    *Warner*, 143 Ariz. 567, 571 (1985); *see also Worden v. Klee Bethel, M.D., P.C.*, No. 1

4    CA-CV 08-0490, 2009 WL 2003321, at *5 (Ariz. App. July 9, 2009) (reduced fee award

5    affirmed).

6           In light of this, the Court will reduce the amount of attorneys' fees by 30% for a

7    reasonable attorneys' fees award of $1,291,560.83.  Additionally, the Court will award

8    Impact an award for non-taxable costs in the amount of $102,857.99.  The Court finds a total

9    award for attorneys' fees and non-taxable costs in the amount of $1,394,418.82 to be

10   appropriate and will grant in part Impacts' Motion for Attorneys' Fees and Related

11   Non-taxable Expenses (Doc. 570) to award Impact this amount.

12

13          Accordingly, IT IS ORDERED:

14          1.      JDM's Motion to Strike (Doc. 583) is GRANTED.  Statement included in the

15   declarations of William P. Eiselstein and Stephen W. Odom, Jr., related to settlement

16   discussions between the parties are stricken and will not be considered by the Court.

17          2.      JDM's Motion for Attorneys' Fees (Doc. 565) is DENIED.

18          3.      Individual Defendants' Motion For Award of Attorneys' Fees And

19   Non-Taxable Expenses (Doc. 568) is GRANTED IN PART.  Individual Defendants are

20   awarded attorneys' fees and non-taxable costs from JDM in the amount of $452,108.47.

21          4.      Impact's Motion for Attorneys' Fees and Related Non-Taxable Expenses (Doc.

22   570) is GRANTED IN PART.  Impact is awarded attorneys' fees and costs from JDM in the

23   amount of $1,394,418.82.

24          DATED this 24th day of March, 2021.

25

26

27   _____
     Cindy K. Jorgenson
     United States District Judge

28

- 31 -